THE TOWN OF WATERBURY *vs.* THE WATERBURY TRACTION COMPANY.

Third Judicial District, New Haven, June Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The plaintiff, a town, sought to recover of the defendant, a street railway company, the amount of a judgment which the town had been compelled to pay to *A* for personal injuries caused by a defective highway, alleging that the defect was due to the negligence of said company in taking down and failing to replace a railing or barrier by the roadside. *Held :—*

1. That upon proof of these allegations, and of the further fact that the defendant had been notified of the previous action and had been requested to appear and protect its interests therein, the record of such judgment became admissible against the railway company and precluded it from denying that the highway was defective in the respect alleged in such action, that *A* had received his injury by reason of said defect and was free from negligence himself, and that the town was liable to him in the amount of such judgment.

2. That the notice in question was not insufficient because in it the town did not offer to surrender the entire defense of the cause to the street railway company, as the latter had no such exclusive right.

3. That while it was undoubtedly the duty of the town to protect the public from danger arising from the negligence of the railway company, the latter was primarily responsible and could not escape liability to the town upon the ground that the town was negligent in not compelling the railway company to restore the railing, or in not replacing it itself. As between the parties there was no co-operative negligence in the act causing the injury, and therefore the doctrine that there could be no contribution between joint tort feasors did not apply.

4. That the town was entitled to recover not only the amount of *A's* judgment, but also its reasonable costs and expenses in defending that action; and therefore might prove their amount, including counsel fees, and that all the steps in the litigation had met the approval of the railway company's counsel, or had been taken in good faith and upon reasonable grounds.

5. That an attorney employed by the street railway company to look after its interests during the pendency of *A's* suit, had no authority, after final judgment, to make any admission concerning reimbursement to the town, and therefore an alleged statement of his respecting that matter was inadmissible.

Where a part only of certain testimony is objectionable, a general objection to the whole of it is insufficient.

Witnesses for the plaintiff were permitted to testify that there had been no change in the condition of things at the place in question between the time of the accident and the day on which a map of the place was made, except that the railing had been replaced in a different way. *Held* that for the purpose of laying a foundation for the admission of the map, this evidence was properly received.

The defendant offered the opinions of witnesses to show that even if the railing had been in its original position it would not have been sufficient protection to the public, and would not have prevented a full-grown man who chanced to fall against it from going over the embankment. *Held* that this evidence was properly excluded, the cause of the accident having been conclusively established in the first action; and moreover, that it did not tend to prove a different cause.

The main issue of fact in the case was whether the defendant, before the accident, had taken down the railing. There was no direct evidence that it had done so, and a witness in its employ, but called by the plaintiff, testified that it was not taken down by the defendant. *Held* that evidence that its superintendent, on the day after the accident, promised the town's agent to put up the railing, and that it was put up on that day by the defendant's workmen under the direction of its general manager, was not admissible as an acknowledgment by the defendant that its workmen had in fact removed the railing before the accident.

While a party may prove that one of his witnesses is mistaken in re-

spect to a certain matter, he cannot directly attack the witness's character for truth and veracity, either by argument or by evidence.

Argued June 11th—decided September 27th, 1901.

ACTION to recover the amount of a judgment rendered against the plaintiff in a suit by one Ashborn for a personal injury sustained by him in the highway, and the expenses incurred in defending such suit, brought originally to the District Court of Waterbury and thence by the defendant's appeal to the Superior Court in New Haven County and tried to the jury before *Thayer, J.;* verdict and judgment for the plaintiff for $8,900, and appeal by the defendant for alleged errors in the rulings and charge of the court. *Error and new trial granted.*

The substituted complaint, the averments of which the plaintiff claimed to have proved, alleged, in substance, that on July 18th, 1894, the highway in question at a described point was defective and unsafe, in that it was raised above the adjoining ground on the westerly side, and there was no fence or railing along said westerly side; that it was the duty of the town of Waterbury to keep and maintain said highway at that place safe and convenient for public travel; that on or before the 1st day of June, 1894, the said town of Waterbury erected a railing on the west side of the highway at said place, and maintained the same until it was taken down by the defendant's servants, as hereinafter described; that on or about the 10th day of July, 1894, the defendant by its servants and agents, for the purpose of moving one of its poles a few inches further west out of the traveled track of said highway, took down the south end of said railing, and negligently suffered the same to remain down, and so negligently put the said railing up again that it immediately thereafter fell down again upon the ground and so remained until after the accident; that on July 18th, 1894, Anthony W. Ashborn, of Waterbury, was traveling upon said highway in the exercise of due care, near to and by the side of the place where the railing was so down, when in consequence of the negligence of the defendant and its servants in taking down said

rail, and in suffering and permitting the same to be and remain down, and the careless manner in which the same was put up and secured in place again by the defendant's servants, he fell down the bank of the west side of said highway onto the rocks below, a distance of about sixteen feet, and was injured as described; that said Ashborn duly gave written notice of his injury, and on the 14th day of September, 1894, brought his certain action before the District Court of Waterbury, on the first Tuesday of October, 1894, to recover for his said injuries; that on or about the 9th day of October, 1894, the plaintiff's attorney gave the defendant a written notice, and at the same time sent to the defendant a copy of the writ and complaint in the action brought by Ashborn against the town, which notice was as follows:—

"Oct. 9th, 1894.

"The Waterbury Traction Co., City.

"Gentleman: Anthony W. Ashborn has brought suit against the town of Waterbury for $10,000 damages, incurred by reason of a defective highway, on July 18th, 1894.

"This suit was returned to the District Court of Waterbury on the first Tuesday of October.

"Inasmuch as the defective condition of the highway complained of was caused by your failure to replace the railing taken down when you were laying your tracks along South Main Street, the town will look to you in case a judgment for damages is recovered.

"Inclosed herewith is a copy of the complaint, and if you should desire to be represented by counsel in this case the town would be very glad of such assistance.

"Yours truly,
"TOWN OF WATERBURY,
"By KELLOGG & KELLOGG, ATTYS."

The complaint further alleged that the defendant by its attorneys appeared and assisted the attorneys of the town in the defense of the said action, so brought before the said District Court; that on April 25th, 1896, the said District Court rendered a judgment against the town for $5,000 damages,

and costs; that from said judgment the town appealed to the Superior Court on the first Tuesday of May, 1896; that on the 15th day of January, 1897, judgment was rendered in the Superior Court against the town for $6,000 damages, and costs; that from this judgment the town appealed to the Supreme Court, which, on the 25th day of May, 1897, granted a new trial; that on the 3d day of March, 1898, a judgment was rendered in the Superior Court for $5,250 and costs taxed at $456.71; that from this last judgment the town again appealed to the Supreme Court, which court on the 15th day of June, 1898, decided that no error had been committed; that on June 22d, 1898, the plaintiff was compelled to pay said Ashborn in settlement of said judgment $5,778.61; that the plaintiff necessarily also paid its own costs and disbursements for counsel fees in defending the said action in said several courts, amounting to more than $3,000, the items of which were stated; that the plaintiff demanded to be indemnified for the loss and expenses so incurred, but the defendant refused to pay the same; that the defendant in this action had actual knowledge of said action in favor of Ashborn against the town, from its commencement to its final determination, and knew or should have known that the damages therein claimed were caused by the wrongful and negligent acts of the defendant and its agents engaged in its business of taking down that railing, and allowing the same to be down at the time Ashborn was injured, and that the damages recovered by Ashborn in said action were caused by the defendant's servants engaged in its business in allowing said railing to be down at the time said Ashborn was injured.

The defendant demurred to the complaint upon the grounds, in substance, that it did not appear that the acts of negligence alleged in this complaint to have been committed by the defendant could have been in issue in the suit brought by Ashborn, nor that the present defendant was summoned to be made a party in said action, nor that it was notified to appear and defend at the appeal and trial of said action in the Superior Court, nor that the defendant received such notice to defend as rendered it liable for costs and counsel

fees, and especially for expenses incurred after the first trial in the District Court. This demurrer was overruled *pro forma*.

Upon the trial of the case to the jury the plaintiff claimed to have proved that it erected the railing described in the complaint, in 1884, and that about June 23d, 1894, it was taken down by the defendant for the purpose and in the manner described in the complaint, and not restored to the condition in which the defendant found it.

The defendant claimed that it did not take down said railing, but that its men found it down at its south end when they went to move their trolley-pole, and that after they had shifted the trolley-pole they put up the railing so that it was held by the iron pins upon the tops of the three northerly of the four supporting posts, with its south end sprung against the east face of the south supporting post.

The plaintiff was permitted against the defendant's objection to lay in evidence the complaint, answer and judgment-file in said action by Ashborn, together with evidence that the defect proved in the trial of that case consisted in said railing being down at its south end, as described in this complaint.

There was no direct evidence that the railing in question was taken down by the defendant, and one Oviatt, an employee of the defendant, who, with several men in his charge, went to the place in question to shift said trolley-pole to the west, when called as a witness for the plaintiff, testified upon his direct examination to the moving of said trolley-pole, and that the rail was down when he went there.

The plaintiff was permitted to prove, against the defendant's objection, that on the morning after the accident its superintendent of streets, Mr. Wright, with the first selectman of the town, called upon the defendant's superintendent, Bradley, in charge of the operation of its cars, and notified him of the accident, and that the railing was down, and that the defendant's men had taken it down and neglected to put it up, and requested that it be put up immediately; and that said Bradley went at once to the place of the accident and

met Wright there, and promised him that he would have the
rail put up the same day; and to prove by the testimony of
said Oviatt that on said day, in pursuance of said notice and
promise, Mr. Shepardson, the general manager of the defend-
ant, sent said Oviatt and a gang of men to put said railing in
its place, and that they did so by cutting the railing in two
in the middle and placing the two parts upon the supporting
posts and fastening the middle ends to the trolley-pole.    The
court admitted this, and other evidence to the same effect,
as tending to prove that the defendant took down the rail-
ing, and afterwards charged the jury that said evidence was
competent for them to consider upon the question of whether
the defendant in fact took down the railing.

It appeared from evidence offered by the plaintiff, that
Mr. Wright had knowledge that said railing was down some
three weeks before the accident, and that he told Oviatt,
who was then at work moving the trolley-pole, to put the
railing up again; that Wright went away for a week, and
on his return was engaged upon other highways and did not
learn of the condition of the railing again until the morning
after the accident.    The defendant objected to proof that
Oviatt promised that he would put up the railing, and that
Wright relied upon said promise and supposed that the rail-
ing had been properly put up again, and the court sustained
the objection.    The defendant afterwards claimed that dur-
ing said three weeks the plaintiff willfully and intentionally
neglected to put up said railing, and requested the court to
charge the jury that if the plaintiff had knowledge for more
than a week prior to the accident that the railing was down,
and willfully, intentionally or grossly neglected to put it up,
and the accident occurred in consequence of its being down,
it could not recover, even though the defendant's workmen
had taken down the railing and neglected to restore it in as
good a condition as before it was taken down.    The court
did not charge as requested.

The plaintiff offered in evidence a map of the *locus* made
in 1897, which was excluded because the engineer, Patten,
who made it, was unable to testify that it correctly repre-

sented the place at the time of the accident. Thereupon witnesses Wright and McAllenney, who knew the place both before and since the accident, were permitted, against the defendant's objection, to testify to the different way in which the railing was put up after the accident, and the former to testify that he should say the map was a good map of the place, and the engineer to testify how the railing was put up as appeared by the map. The map was afterwards received in evidence without objection.

The defendant asked of its witness Fairclough, who was acquainted with the locality in question and with the use of highways, whether in his opinion the railing would have been sufficient for the reasonable protection of the public if it had been upon the top of all the four supporting posts. The witness answered that he thought it would not. This testimony was afterwards, upon the plaintiff's motion, stricken out.

Mr. Upson, a witness of the defendant, a former selectman, and accustomed to the use of highways and to putting up railings, was asked by defendant's counsel whether in his opinion the railing in question, which was described in the question, was sufficient to prevent a full-grown man from going over the rail and down the embankment, if he should by accident fall or stagger against it or come against it from the east side. The court excluded the question upon the plaintiff's objection.

The plaintiff, having offered evidence that it caused to be given to the defendant the written notice described in the complaint to appear and defend said original action, and that the defendant employed Messrs. Terry & Bronson to look after their interests in the matter during the pendency of said suit, that one of defendant's counsel was present taking notes during the trial in the District Court and that said counsel were consulted by plaintiff's counsel during all the proceedings taken in said case, asked of Mr. Kellogg, who was one of the attorneys for the town in said original suit, and who was called as a witness by the plaintiff, what conversation he had with Mr. Terry shortly after said notice

was sent and after the trial had been commenced in the District Court. The defendant objected to said inquiry, but the court admitted it, and the witness answered that the conversation was in regard to the preparation of an answer and as to the trial; that he suggested that a demurrer should be filed, and that Mr. Terry gave him the names of certain witnesses and the substance of what they would testify to.

Mr. Kendrick, one of said attorneys for the town, also testified, as a witness for the plaintiff, that he consulted with said Terry at every step in the Ashborn trial, and that Mr. Terry advised the appeal to the Superior Court, and the appeals to the Supreme Court, and that after final judgment the witness went to Terry and asked him what they should do, and that Terry answered, "Pay it, and then I will talk with you about it later." The defendant moved to strike out this evidence and the court denied the motion.

Against the objection of the defendant the court admitted evidence offered by the plaintiff to prove that the appeals to the Superior and Supreme Court were taken in good faith and upon the best judgment of counsel for the town, and that it paid to its said attorneys Kellogg and Kendrick, for counsel fees and expenses for the trial of the Ashborn case, in the District Court $500, and in the Superior and Supreme Court $1,879.60.

The court charged the jury, in substance, that if they found that the injury for which Ashborn recovered judgment was caused by the defendant's negligence as alleged in the complaint, and that the defendant before the trial in the District Court received the notice described in the complaint, the defendant was by the judgment in the former action precluded from denying that the highway was defective in the respect alleged in the Ashborn complaint, that Ashborn received the injuries by reason of said defect, that Ashborn was not guilty of contributory negligence, and that the town was bound to pay him the damages suffered by those injuries. The court also charged, in substance, that upon proof of such notice to the defendant, and that its negligence caused said injuries to Ashborn, the plaintiff would be entitled to recover the

amount of the judgment and costs in said Ashborn suit, together with its own reasonable and proper costs and expenses necessarily incurred in defending said suit in good faith and upon reasonable grounds, or with the advice or acquiescence of the defendant.

Upon the question of whether the defendant did in fact take down the south end of the railing pole, the court said in its charge: "The date is alleged to be on or about July 10th, but the date is of no importance if the defendant took down the south end of the pole at any time within six months or a year prior to the accident, . . . nor is it important that the defendant took it down in moving the trolley-pole back; that and the date are not important allegations to be explicitly proved."

In its reasons of appeal the defendant complains of said rulings and charge of the trial court, and of the refusal to charge as requested.

*William H. Williams* and *Nathaniel R. Bronson*, for the appellant (defendant).

*John O'Neill* and *John P. Kellogg*, with whom were *Greene Kendrick* and *Terrence F. Carmody*, for the appellee (plaintiff).

HALL, J. The questions raised by the demurrer to the complaint can be sufficiently considered in discussing the rulings of the court upon questions of evidence and the charge to the jury.

While it is true that the question of the liability of the Traction Company for the injury to Ashborn was not, and could not properly have been made, an issue in the suit against the town, and that upon that point the present defendant could not be affected by the former judgment, it was still competent for the plaintiff to allege in this action, and to prove by evidence outside of the record in the other suit, that the negligent act of the trolley company in taking down the railing and not restoring it constituted the defect which

upon the former trial was proved to have caused the injury to Ashborn, and that that was the defect which in the other complaint was described as the failure of the town to maintain a railing at the place described.

After proof by the plaintiff that the defendant had so caused the defect which produced the injury for which Ashborn had recovered judgment against the plaintiff, and of the further fact that the defendant had been notified of the pendency of that suit and requested to defend it, as alleged in the complaint, and had been offered an opportunity to appear and protect its interests so far as it could do so in that action, the record of the former judgment became not only admissible in evidence, but conclusive upon the defendant upon the points stated in the charge, and upon the question of the liability of the town to Ashborn to the amount of that judgment. Upon proof of these facts the defendant, though not strictly a party to the former action, was no longer to be regarded in law as a stranger to the judgment rendered in that suit. If it was offered the same opportunity to protect its interests, which were involved in the first action, as a party to the record in that suit would have had, it was precluded by that judgment from making any defense in this action which it could have made in the other suit had it been made a formal party. 1 Greenl. on Ev. §§ 188, 523 ; 2 Black on Judg. §§ 574, 575 ; Big. on Estoppel (4th Ed.), p. 124 ; *Davis* v. *Smith,* 79 Me. 351 ; *Littleton* v. *Richardson,* 34 N. H. 179, 187 ; *Spencer* v. *Dearth,* 43 Vt. 98, 106 ; *Mayor, etc.,* v. *Brady,* 151 N. Y. 611.

It seems clear from the record, that proper evidence was presented tending to prove that the defect in the highway which rendered the town liable in damages to Ashborn, consisted in the fact that the railing in question was down as alleged in the complaint, and it appears further to have been shown by uncontradicted evidence that the defendant received the written notice of the pendency of the Ashborn suit ; and that, although its attorneys employed to look after its interests during the pendency of said action did not actually participate in the defense in court, one of them was

present at one of the trials taking notes, and that said attorneys were consulted as to the various appeals and steps taken in the defense of said suit, and either advised or approved of the same. Assuming that there was also some legitimate evidence supporting the allegation that the railing was taken down by the defendant, there was no error either in the ruling of the court admitting the former judgment in evidence, or in its charge as to the effect of that judgment.

The notice was not insufficient because in it the town did not offer to surrender the entire defense of the case to the defendant. The Traction Company was not entitled to assume the defense to the exclusion of the town from the case. To render the judgment binding upon the company it was only necessary to show that it had received fair notice and information of the pendency of the suit and of its claimed liability, and been offered such an opportunity to participate in the defense for the protection of its interests as it would have had if it had been a party of record. The notice which was given almost immediately after suit was brought by Ashborn, and long before the trial of that case, informed the defendant of the pendency and character of the action, of the reason why it was claimed to be ultimately liable, and in effect requested it to take part in the defense. No opportunity of defense seems to have been denied it. Having received such notice it seems to have taken such part in the defense as it cared to. Had it desired it could have been made a party, upon its own application to the court. Practice Book, p. 5, § 15. Had the Traction Company chosen to take a more active part in the defense, either as a party or otherwise, the town would still have been entitled to remain in the case, both for the purpose of showing that it was not liable in the action, and for the protection of its claim—which was adverse to that of the Traction Company—that if liable it was upon a ground which gave it a right of action over against that company. *Oceanic Steam Nav. Co.* v. *Compania Trans. Espanola Co.*, 134 N. Y. 461; *Davis* v. *Smith*, 79 Me. 351, 357; *Chicago City* v. *Robbins*, 2 Black, 418.

If the evidence showed that the injury to Ashborn was

produced by the alleged wrongful act of the defendant, the fact that the plaintiff failed to perform its duty in not seeing to it that the defendant put up the railing again, and that by such negligence on its part it became liable for the injury to Ashborn, did not deprive the plaintiff of its remedy over against this defendant. The plaintiff and defendant were not in that case to be considered as in equal fault, and the principle that there can be no contribution between joint tort feasors did not apply. As between it and the public it was undoubtedly the duty of the town in such case to properly protect travelers against the danger which the Traction Company had created, and by its failure to do so it became liable in damages to Ashborn. But the primary cause of the accident was the act and fault of the defendant in taking down the railing and failing to restore it, assuming that the defendant took it down as alleged. As between the plaintiff and defendant there was no co-operation in the act of negligence which caused the injury. The plaintiff did not permit the defendant to leave the railing down. If the defendant took it down it promised impliedly, if not expressly, to do so in a way not to endanger public travel, and to put it up again. If it failed to keep that promise it cannot justly charge the plaintiff with negligence, either in having relied upon such promise or in having failed to compel its performance. If the defendant removed the railing and left it down, as alleged, the fact that the plaintiff had knowledge of the defect and neglected to repair it, although it had a fair opportunity to do so, will not prevent a recovery in this action. *Hamden* v. *New Haven & N. Co.*, 27 Conn. 158, 167; *Norwich* v. *Breed*, 30 id. 535, 545; *Holyoke* v. *Hadley Co.*, 174 Mass. 424; *Brookville Borough* v. *Arthurs*, 152 Pa. St. 334; *Chicago City* v. *Robbins*, 2 Black, 418, 425.

The remark of the court, that the date when the railing was taken down was of no importance, evidently had reference to the question of variance and not of negligence. With the facts before them the jury must have understood it to mean that the allegation of the complaint that the railing was removed on or about July 10th, 1894, would not prevent the

plaintiff from recovering if it was in fact removed the latter part of June, the time when both parties claimed the trolley-pole was shifted by the defendant. The jury were clearly told that the plaintiff could not recover if through its negligence the railing was down before the time when it was claimed to have been so removed by the defendant.

There was no error in the charge of the court as to the effect of the plaintiff's negligence upon its right to recover, and the evidence seems to have called for no further instruction upon that subject than was given.

For the purpose of showing that the expense incurred by the town in costs and counsel fees in defending the Ashborn suit was reasonably necessary, the plaintiff was entitled to prove the sums paid to its attorneys for services in the several trials, and that the several appeals and proceedings in such defense were taken by the town either with the advice or approval of counsel for the Traction Company, or in good faith and upon reasonable grounds.

Whether the sums paid by the plaintiff to its attorneys were reasonable charges for the services rendered, and whether the several appeals were acquiesced in by the defendant, and if not, whether they were taken by the plaintiff upon reasonable grounds, were all questions for the jury. Such costs and expenses as were thus shown to have been reasonably necessary, the plaintiff was entitled to recover as part of the natural and direct consequences of the defendant's wrongful act, upon proof that the accident was the result of the defendant's fault and that it was notified to appear and defend the other action, as alleged. 1 Suth. on Dam. (2d Ed.) § 83; *Westfield* v. *Mayo*, 122 Mass. 100; *Duxbury* v. *Vermont Central R. Co.*, 26 Vt. 751; *Chesapeake & Ohio Canal Co.* v. *County Comrs.*, 57 Md. 201.

The testimony of Mr. Kendrick, that after final judgment in the Ashborn suit Mr. Terry said to him, " Pay it and then I will talk to you later about it," was inadmissible, and should have been stricken out, had defendant's motion been directed to that part instead of to all Kendrick's testimony, a part of which was admissible. The statement ascribed to Mr. Terry

was beyond his authority, under an employment to look after the interests of the Traction Company during the pendency of the Ashborn suit.

Assuming, as we think we may from the record, that the testimony of the plaintiff's witnesses, Wright, McAllenney and Patten, was offered not for the purpose of proving how the railing was put up after the accident, but merely to show that when the map offered in evidence, was made, there had been no material change in the place since the accident, and to explain the map, it was properly admitted.

There was no error in excluding the testimony of the defendant's witnesses Fairclough and Upson. It seems to have been offered to prove that the fact that the railing was down did not cause the accident to Ashborn. As proof that the accident was so caused, the plaintiff seems to have relied entirely upon its claim that that fact had been conclusively established by the former judgment. Such having been the plaintiff's claim, the questions in this case as to the cause of the accident were whether in the former action the fact had been adjudged as the plaintiff claimed, and whether the defendant had received the alleged notice, and not what defect in fact caused the accident. But the inquiry of Fairclough was also inadmissible, because the fact that the railing, when up, was insufficient, did not tend to prove that the fact that it was down at the time of the accident was not the cause of the accident. The questions asked Upson were objectionable for the same reason, and apparently upon the further ground that it had not been shown that Ashborn fell in the manner assumed in the inquiry.

The evidence offered by the plaintiff that on the morning after the accident, Bradley, the defendant's superintendent of the operation of cars, promised to put up the railing, and that it was put up on that day by defendant's workmen at the direction of the defendant's general manager, was improperly received.

This evidence was admitted, not as proof that the highway was in fact defective by reason of the condition of the railing as described in the first action, but as in the nature of

an admission by the defendant that its workmen had taken the railing down before the accident, as alleged in the present action. Whether the defendant had before the accident taken down the railing which the plaintiff had put up at this place, was the principal issue of fact in the case. Without proof that the defendant had so removed the railing, the plaintiff could not recover. One of the plaintiff's witnesses, Mr. Oviatt, testified in effect that the railing was not taken down by the defendant, but that it was down when the defendant's workmen went to shift the trolley-pole. Notwithstanding this testimony the jury found this issue in favor of the plaintiff, without any direct evidence that the defendant took the railing down, and possibly upon the evidence that the defendant put up the railing the morning after the accident. The question, therefore, whether the fact that the defendant's officers caused the railing to be put up securely when informed of the accident and when requested by the plaintiff's officers to do so immediately, and when told by them that the defendant's workmen had taken it down and neglected to put it up, can, under these circumstances, be regarded as evidence of an acknowledgment by the defendant that the railing had been taken down by its workmen, becomes an important one in this case. In *Nalley* v. *Hartford Carpet Co.*, 51 Conn. 524, 531, adopting the reasoning in *Morse* v. *Minneapolis & St. L. Ry. Co.*, 30 Minn. 465, it was held that evidence of the repairing, after an accident, of a structure, an alleged defect in which was said to have caused the injury complained of, was not admissible to show the previous defective condition of such structure. In that case, and in *Columbia & Puget Sound R. Co.* v. *Hawthorne*, 144 U. S. 202, the authorities upon that subject are quite fully reviewed. The main ground of the decision of this court in the case cited is, that it would be an unjust rule which would forbid one who had learned of an accident from doing an act to prevent its recurrence except at the risk that his conduct might be held to be an admission of liability for that which had already happened. "The fact," says the opinion, "that an accident has happened and some person

has been injured, immediately puts a party on a higher plane of diligence and duty from which he acts with a view of preventing the possibility of a similar accident, which should operate to commend rather than condemn the person so acting." Such evidence is excluded, not because the fact that a highway or structure is repaired does not ordinarily warrant the inference that such repairs were necessary, and that the persons making them were performing a duty, but because to draw such inferences from the fact that repairs have been made by one who has just learned of a serious accident, would be to decide what one should have done before the accident by what he did after it occurred, and would be putting "an unfair interpretation upon human conduct," and because a rule which compels one to choose between refraining to do an act which will prevent other accidents, and making evidence against himself by doing such act, is not the one "best founded in reason, justice and public policy."

We think the same reasons which call for the exclusion of such evidence of subsequent repairs, when offered as an admission of the existence of the alleged defect, require its rejection when offered as proof of an acknowledgment that the defect repaired was the cause of the accident in question, or as an admission that it was the duty of one repairing the defect to make such repairs.

That the action of the defendant's officers in directing the railing to be put up after the accident did not in the case at bar involve an admission of duty on the part of the defendant, is also apparent from the fact that such action may equally well be attributed to their reliance upon the statements of the officers of the town as to how the railing came to be down. But without considering these statements of Wright and the selectman that the defendant's workmen had taken the railing down, the conditions under which the subsequent repairs were made were such as to render it unjust to interpret the conduct of the defendant's officers as an admission that their workmen had in fact taken down the railing. The defendant's general manager was informed that

the railing was down near the place where the trolley-pole had been shifted, thereby rendering the highway dangerous for public travel, and that a serious accident had occurred there on the previous night. He was requested by the officers of the town, from whom permission had been obtained to move the trolley-pole, to put up the railing immediately. To do so would involve but slight expense and trouble, and would prevent further accidents and perhaps the loss of life. It may well be presumed that under these circumstances a proper regard for human life would have prompted him to order the defect repaired in order to prevent the possibility of other accidents, though he may at the same time have believed that there was no sufficient ground for a claim that the railing was down through the defendant's fault. Waiving the question of the power of the superintendent of the operation of cars, or of the general manager, to bind the defendant by their admission of its liability for the accident which had happened, we think that as a rule of sound policy their acts in immediately causing the railing to be put up securely should be commended, rather than that they should be construed as an acknowledgment that the defendant was at fault, and be made the reason for subjecting the defendant company to the payment of the damages sustained by Ashborn.

Notwithstanding the testimony of Mr. Oviatt, as a witness for the plaintiff, that the railing was down before the trolley-pole was shifted, it was permissible for the plaintiff to prove that the fact was otherwise, but not, either by argument of counsel or by evidence, to directly attack his character for veracity. *Olmstead* v. *Winsted Bank*, 32 Conn. 278, 287; *Wheeler* v. *Thomas*, 67 id. 577–580; *Barlow Bros. Co.* v. *Parsons*, 73 id. 696.

While the record seems to show that the defendant had some reason to complain of the remarks which plaintiff's counsel were permitted to make during their arguments as to the credibility of Mr. Oviatt, we think it unnecessary to discuss the defendant's exceptions to the charge of the court regarding the reply made by defendant's counsel to such remarks,

and to the action of the court in permitting plaintiff's counsel to make statements in the presence of the jury concerning facts which were not in evidence.

There is error and a new trial is granted.

In this opinion the other judges concurred.