After stating the case: As a general rule, when indemnity is sought by one who has been adjudged liable for damages arising from negligence for which another, as between themselves, is primarily liable, the judgment in the action against the former is evidence in the action brought for indemnity that the defendant in the first action, plaintiff in the second, was liable for the damages, and when notice has been given to defend, of the amount of the damages arising from the injury, but it does not establish which of the wrongdoers is (223) primarily liable, unless that question was involved in the issue and decided. Mayor v. Brady, 70 Hun, 250; Nav. Co. v. Espanola, *Page 182 134 N.Y. 461. But in this case we are of the opinion that the judgment in the first action must be given greater effect than it would have under the ordinary rule, as by referring to the record in that case, which was in evidence, we can see clearly, by reading the verdict in connection with the pleadings, that the jury have found such facts as establish the primary liability of the West Construction Company for the injury to Clodfelter; and, besides, the undisputed facts in this case show the same liability. The facts are that the construction company dug the trench and failed to place lights there or to erect barriers around the trench to warn persons using the walk. It was the author of the injury and the principal wrongdoer. As between it and the town, the latter has committed no wrong. An illustration of the rule will be found in Mayor v. Brady, supra, where it is said: "The right to lay the pipe carried with it to the contractors the obligation to so protect and guard it as to warn passers-by and thus save them from injury. Consent by a municipal corporation to a person to do a lawful act merely permits it to be done in a careful, prudent and lawful manner, and when it is performed in any other manner, and injury to third persons ensues, the author of the injury is liable therefor. Had the contractors performed their full duty by so guarding the pipe as to warn travelers of its presence on the walk, there could have been no recovery in the action of Cruikshank against the city." So, in Port Jervis v. Bank,96 N.Y., 550, it was said: "It is well settled that a municipal corporation which has been compelled to pay a judgment recovered against it for damages sustained by an individual through an obstruction, defect or excavation in the sidewalk or street of such corporation, has an action over against the person who negligently or unlawfully created the defect which causes the injury. (Rochester v. Montgomery, 72 N.Y. 67, and cases there cited.) This liability grows out of the affirmative act of the defendant and renders him liable not only to the party injured, but also mediately liable to any party who has been damnified by his neglect. Liability in such a case is predicated upon the negligent (224) character of the act which caused the injury and the general principle of law which makes a party responsible for the consequences of his own wrongful conduct. (Clark v. Fry, 8 Ohio St. 359;Ellis v. Gas Co., 75 Eng. C. L., 767.) Consent given by a corporation to a citizen to make an excavation in a public street does not vary the rights or liabilities of the parties in respect to such a cause of action when it is based upon the wrongful and negligent manner in which the act was done, and not upon its unlawfulness. Upon receiving a licensee from the body authorized to grant it to dig in a street, the licensee impliedly agrees to perform the act in such a manner as to save the public from danger and the municipality from liability." The town of Lexington *Page 183 
had a right to suppose that the construction company would guard the excavation it had made, so as to prevent injury to the public. "Under such circumstances, the parties can not be said to be in paridelicto. It is true that the plaintiffs thereby became liable to the party who suffered injury in consequence of this neglect, but they were under no obligation to shield the defendants from the consequence of their own omissions. The decisions in Swansey v. Chace, 16 Gray, 303, and other cases above cited, fully sustain the position that the party which placed the obstruction in the highway can not resist the claim of the town to indemnity for damages paid, on the ground that the neglect of the town to remove the obstruction contributed to the injury." Woburn v. R. R., 109 Mass. 283. But more to the point is the decision in the leading case of Lowell v. R. R., 23 Pick., 24, where the principle was thus stated and applied: "The distinction in all these cases is the same. The parties are not in pari delicto, and the principal offender is held responsible. This distinction is manifest in the case under consideration. The defendants' agent, who had the superintendence of their works, was the first and principal wrongdoer. It was his duty to see to it that the barriers were put up when the works were left at night; his omission to do so was gross negligence, and for this the defendants were clearly responsible to the parties injured. In this negligence of the defendants' agent the plaintiffs had no participation. Their subsequent negligence was rather constructive than actual. The most that can be said of it is that one of their selectmen (225) confided in the promise of the defendants' agent to keep up the barriers, and by this misplaced confidence the plaintiffs have been held responsible for damages to the injured parties. If the defendants had been prosecuted instead of the town, they must have been held liable for damages, and from this liability they have been relieved by the plaintiffs. It can not, therefore, be controverted that the plaintiffs' claim is founded in manifest equity. The defendants are bound in justice to indemnify them so far as they have been relieved from a legal liability, and the policy of the law does not in the present instance interfere with the claim of justice. The circumstances of the case distinguish it from those cases where both parties are in pari delicto, and one of them, having paid the whole damages, sues the other for contribution." The case of Waterbury v. Traction Co., 74 Conn. 152, presented facts very similar to those in this case, and the Court held: "The primary cause of the accident was the act and fault of the defendant in taking down the railing and failing to restore it, assuming that the defendant took it down, as alleged. As between the plaintiff and defendant, there was no cooperation in the act of negligence which caused the injury. The plaintiff did not permit the defendant to leave the railing down. *Page 184 
If the defendant took it down, it promised, impliedly, if not expressly, to do so in a way not to endanger public travel, and to put it up again. If it failed to keep that promise, it can not justly charge the plaintiff with negligence, either in having relied upon such promise or in having failed to compel its performance. If the defendant removed the railing and left it down, as alleged, the fact that the plaintiff had knowledge of the defect and neglected to repair it, although it had a fair opportunity to do so, will not prevent a recovery in this action." The subject was discussed to some extent in Gregg v. Wilmington, ante, 18, and the two cases, while not precisely alike, have some features in common.
The jury in this case, under the instructions of the court, found that the injury was caused by the negligence of the West Construction Company, and that, as to Clodfelter, the town of Lexington concurred in that negligence, but that the construction company was (226) primarily liable, as between it and the town. This is the meaning of the verdict, when it is read in the light of the evidence and the charge of the court. So far as the liability of the construction company to the town is concerned, the fact that the city did not guard against the consequences of the negligent act committed by the construction company by lighting the dangerous place or erecting barriers there, does not prevent its recovery against that company for its primary negligence. The original wrong, which caused the injury, was done by it and not by the town, and, as between the two, it can not be correctly said that the town participated in its wrong or was codelinquent or a joint tort feasor. If the town was under the obligation to see that the negligence of its contractor was so guarded against as to prevent injury to pedestrians, and to take proper measures of precaution for that purpose, before it could recover from him such damages as it had been compelled to pay to a person injured by his negligence, the doctrine we have stated would be of little or no practical value for the protection or indemnification of the town. If the construction company had given proper warning to Clodfelter as he approached the trench, by lights, or had erected sufficient barriers there to prevent his falling in it, the accident would not have happened, whether the town had lighted its streets or not. The wrong done to Clodfelter is, therefore, traceable directly to its negligence in having an unguarded trench in the sidewalk. It had promised with its surety that the work of construction should be performed carefully and that the town should be indemnified from "all suits against it for any injuries or damages sustained by any person by or from any cause under its control, while in the construction of the streets or any part thereof, or any negligence in guarding the same, or by or on account of any act or omission of said contractor or its agents or employees." This provision is certainly broad enough *Page 185 
in its terms to cover this case and to entitle the plaintiff to full indemnity from loss by reason of the negligence of the construction company, which caused the injury to Clodfelter. The judge may have erred when he told the jury that the primary liability of the construction company should be determined by the terms of the indemnity bond, but this is not such an error as will vitiate the trial, for the reason (227) that it appears from the entire case and the real facts, which are not disputed, that the primary liability did exist in law, and consequently that the defendants are liable to the plaintiff. We would grant a new trial for this error if we thought it was a substantial and prejudicial one, but we do not think so. The main question upon which the case was contested in the court below and in this Court by the defendants we have decided against them, and if the case should be returned to the court below for another trial the result upon the facts must inevitably be against the defendants. It would therefore serve no useful purpose to do so. In Cherry v. Canal Co., 140 N.C. 422,Justice Hoke thus states the rule which should prevail in such cases:
"In 2 A. E. Enc. Pl. Pr., 499, we find it stated that `appellate courts deal with judicial acts, and it would not avail to reverse a ruling or judgment correct on the record, though it may be founded on an erroneous reason.' And, again, in the same volume, at page 500: `This system of appeals is founded on public policy, and appellate courts will not encourage litigation by reversing judgments for technical, formal or other objections which the record shows could not have prejudiced the appellant's rights.' The decided cases in this and other jurisdictions support this position. In Butts v. Screws, 95 N.C. 215, Ashe, J., for the Court, says: `A new trial will not be granted when the action of the trial judge, even if erroneous, could by no possibility injure the appellant.' See also, Ratliff v. Huntley, 27 N.C. 545; Fry v. Bank,75 Ala. 473. The rule also finds support in Shackleford v. Staton,117 N.C. 73." The verdict and judgment, upon the merits of the case, were right. Rochester v. Montgomery, 9 Hun, 394; Brookville v.Arthurs, 130 Pa. St., 501; Seattle v. Regan, 52 Wn. 262; Milford v.Holbrook, 9 Allen, 17. But we think the instruction of the court on the sixth issue, as to the primary liability of the construction company, may be sustained as a correct one, in the following view of it. It must, of course, be considered and construed with reference to the pleadings, the facts of the case and the issues. The construction company, as we have shown, committed the original wrong, which caused the injury, and the city was not, in a legal sense, particeps delicti. It was liable to Clodfelter, because it failed to discharge the duty of keeping (228) the walk in proper repair and preventing injury to others from the wrong of the construction company. This brought the case within *Page 186 
the terms of the indemnity bond, and by its very words the construction and indemnity companies are liable over to the town for what it has paid under the judgment, with reasonable attorney's fees and costs. The question of primary and secondary liability, as between the plaintiff and the construction company, depend upon whether they were joint tort feasors, and not upon the fact that a bond had been given to indemnify the town; but as it appears that they did not unite in committing the wrong, the construction company being the active and principal offender, the court properly instructed the jury that the defendants were liable upon their undertaking to indemnify the plaintiff from "any negligence in guarding the trench" or from the consequences of "any act or omission of the construction company," and directed the jury to answer the issue in the affirmative, as the execution of the bond was admitted. This was correct, even if they were not otherwise liable.
The contract of indemnity between the plaintiff and defendants was a lawful one. There is no stipulation in it which is contrary to public policy. R. R. v. News Co., 151 Mo., 373; R. R. v. Indemnity Co.,60 N.J. Law, 246. We find
No error.
Cited: Sircey v. Rees, post, 300; Doles v. R. R., 160 N.C. 322.