**SIRA & PAYNE, INC., Petitioner,**

**v.**

**WALLACE & RIDDLE, a partnership, Respondent.**

**No. B–3016.**

Supreme Court of Texas.

July 12, 1972.

Rehearing Denied Oct. 4, 1972.

———■———

Strasburger, Price, Kelton, Martin & Unis, Henry Strasburger and Patrick F. McGowan, Dallas, for petitioner.

Finklea & Finklea, Robert W. Finklea, Dallas, for respondent.

CALVERT, Chief Justice.

This is a suit on an indemnity contract brought by Sira & Payne, Inc., against Wallace & Riddle, a partnership, to recover a sum paid by Sira & Payne in settlement of a suit against it by one Tommie McDonald,

an employee of Wallace & Riddle, and expenses incurred in defense of the suit. Both parties moved for summary judgment. The trial court overruled Sira & Payne's motion and granted Wallace & Riddle's motion, and decreed that plaintiff take nothing and that the defendant recover all costs of the suit. The court of civil appeals affirmed. 470 S.W.2d 793. We reverse the judgments of the courts below and remand the case for a conventional trial.

The summary judgment proofs disclose that Sira & Payne, being under contract with the State of Texas for highway construction work, entered into a subcontract with Wallace & Riddle for excavating ditches. McDonald was seriously injured when the walls of a ditch in process of excavation collapsed upon him. He collected workmen's compensation benefits and medical expenses from American Mutual Liability Insurance Company, his employer's insurer; and then he and the insurer sued Sira & Payne and its superintendent, Foy Wardell, for damages for his injuries. Sira & Payne tendered defense of the suit to Wallace & Riddle, who declined. Trial of the suit resulted in a verdict which was set aside by the district judge. Thereafter, Sira & Payne settled McDonald's suit and filed this suit to recover the sum paid in settlement, plus attorneys' fees and other expenses incurred and paid in defense of the suit.

Any right which Sira & Payne may have to contractual indemnity must be found in its contract with Wallace & Riddle, and particularly in section II thereof, which reads:

"Subcontractor agrees to indemnify and hold Contractor harmless from any and all costs or damages arising out of any wrongs or injuries for damages, either real or asserted, claimed against Contractor that may be occasioned by the negligence or fault of Subcontractor, its agents, servants or employees."

It will be noted that Wallace & Riddle agreed to indemnify Sira & Payne only for damages and costs arising out of injuries caused by the indemnitor's negligence or fault, or by the negligence or fault of its agents, servants or employees. The contractual provision is in all material respects identical with provisions in an indemnity contract considered by us in City of Beaumont v. Graham, 441 S.W.2d 829 (Tex. 1969), which decision was given controlling effect in this case by the court of civil appeals.

In *Graham*, the City of Beaumont contracted for repairs to its water tower, and provided in the agreement that the contractor would indemnify the City from all claims for injuries or damages sustained "on account of any negligent act or fault of CONTRACTOR . . .," or "arising out of his acts in connection with the construction of the said improvements, or occasioned by said CONTRACTOR, his agents, servants or employees." A jury found that negligence of both the City and the contractor was a proximate cause of the death of Graham, an employee of the contractor. In a suit by Graham's beneficiaries, we held as a matter of law that in that fact situation the City was not entitled to indemnity from the contractor, saying (441 S.W.2d 838–839):

"We believe the two provisions . . . were only intended to indemnify the contractee-City against damages or claims resulting solely from acts or conduct of Texas Tower [contractor] . . . that the language used . . . does not evidence an intention of the parties that Texas Tower should indemnify City for the consequences of its own [City's] negligent conduct, or for the consequences of the joint negligence of the parties, or for the consequences of the negligent conduct of City and the non-negligent conduct of Texas Tower."

■ Our primary purpose in granting a writ in this case was to review the quoted holdings in *Graham*. Having done so in light of our subsequent opinion in Joe Adams & Son v. McCann Construction

Company, 475 S.W.2d 721 (Tex. 1971), we are satisfied that, except for misplaced emphasis, our decision in *Graham* was correct. In deciding Adams v. McCann, we reiterated the rule earlier expressed in Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957), and Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S. W.2d 631 (Tex. 1963), that an indemnity agreement will not be held to protect an indemnitee against the consequences of his own negligence unless the obligation is expressed in clear and unequivocal language; and, moreover, the effect of our decision was to hold that parol evidence is not admissible to show that such was the intention of the parties when the obligation is expressed in language which is unclear or equivocal.[1]

█ Applying the rule in this case, it seems obvious that the contract between the parties does not, in clear and unequivocal language, express an obligation on the part of Wallace & Riddle to indemnify Sira & Payne against the consequences of its own negligence, whether such negligence was the sole proximate cause of McDonald's injuries, or jointly or concurrently with the negligence of Wallace & Riddle or another was only a proximate cause of such injuries. This is so even though in the factual context in which the contract was negotiated and executed there was little or no possibility of liability on the part of the indemnitee, and inclusion of the obligation for indemnity may, for that reason, have been meaningless. Viewed in the context of our decision in *McCann*, our conclusion as here stated is a sounder basis for our holding in *Graham* than the one there given, i. e., that the language of the contract there under consideration established, as a matter of law, an intention to indemnify "against damages or claims resulting solely from acts or conduct" of the indemnitor. It follows from our decision in

*Graham,* as here interpreted and in the absence of some other decisive consideration, that Wallace & Riddle are not required by their contract to indemnify Sira & Payne for the consequences of the concurrent negligence of the parties.

A few courts of other jurisdictions have interpreted contracts similar to that in the instant case as imposing an obligation on the indemnitor to indemnify for injuries proximately caused by the concurrent negligence of the parties when the negligence of the indemnitor is active and the negligence of the indemnitee is only passive. We have found no Texas cases making that distinction. As a matter of fact, the only finding of negligence of the indemnitee pointed out by us in City of Beaumont v. Graham was passive, but we held there was no right to indemnity. See also Humble Oil & Refining Company v. Wilson, 339 S.W.2d 954 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.), and St. Louis & S. W. Ry. Co. of Texas v. Arnold, 32 Tex.Civ. App. 272, 74 S.W. 819 (1903), writ ref'd). We do not believe we should enter the actice-passive negligence thicket.

█ In its appeal to the court of civil appeals, Sira & Payne assigned error to the overruling of its motion for summary judgment as well as to the granting of the motion of Wallace & Riddle.

Sira & Payne could establish its right to summary judgment only by proving as a matter of law that it was not guilty of any negligence which was the sole proximate cause or a proximate cause of McDonald's injuries, and that the settlement with McDonald was reasonable, considering the risk involved, and was made in good faith. Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957). This it failed to do and its motion for summary judgment was properly overruled.

---

1. The author of this opinion filed a vigorous dissenting opinion in *McCann,* but now accepts that decision as stare decisis of those questions which were put in issue and were necessarily determined by implication as well as of the questions expressly decided.

Wallace & Riddle could establish its right to summary judgment only by proving as a matter of law that Sira & Payne was guilty of negligence which was either the sole proximate cause or a proximate cause of McDonald's injuries, or that the settlement made by Sira & Payne was, as a matter of law, either unreasonable or not made in good faith. Rule 166–A(c) Texas Rules of Civil Procedure; Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex. 1970). Wallace & Riddle made no such proof. Its motion was erroneously granted and the take-nothing judgment was erroneously rendered and affirmed.

The judgments of the court of civil appeals and trial court are reversed and the cause is remanded to the trial court.

Concurring opinion by WALKER, J., in which REAVLEY, J., joins.

WALKER, Justice (concurring).

I concur in the judgment of reversal and remand but do not agree with the Court's construction of the indemnity agreement. The holding in Joe Adams & Son v. McCann Construction Co., Tex.Sup., 475 S. W.2d 721, is quite narrow. This was recognized in the first dissenting opinion in that case, where it was pointed out that "the majority opinion carefully limits its holding to situations in which the indemnitee's negligence is the sole cause of the injuries." It seems quite strange then that those who protested the *McCann* holding so vigorously should now extend the same to its extreme limits and so deprive many indemnity agreements of the meaning and effect intended by the parties.

The majority holding is based on the rule, reiterated in *McCann*, that an indemnity agreement will not protect the indemnitee against the consequences of his own negligence unless the obligation is expressed in unequivocal terms. This rule is ordinarily applied and serves a useful purpose in cases where the active or primary negligence of the indemnitee was either the sole or a concurrent cause of the injuries

or damage. It is not generally recognized, and has no place, in a case where the indemnitee has been guilty of only passive negligence in failing to discover, or warn of, or protect against, a hazard resulting from the active or primary negligence of the indemnitor. Any reliance on the rule in a case of that nature will produce particularly harsh and unjust results when the negligence of the indemnitor constitutes a violation of some duty owing not only to the injured third person but also to the indemnitee. See Annotation, 27 A.L.R.2d 663, 737 et seq.; 41 Am.Jur.2d Indemnity § 15 et seq.

The distinction just mentioned is not always articulated by the courts, but it becomes apparent when their decisions are compared. For example, the New York Court of Appeals recognizes the rule that "contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms." Thompson-Starrett Co. v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35. The rule was not even mentioned, however, in an opinion dealing with an obligation of a contractor to indemnify the owner against liability for injury or damage done by the contractor "in the course of the performance by him of this agreement or otherwise, whether by negligence or otherwise." Dudar v. Milef Realty Corp., 258 N.Y. 415, 180 N.E. 102. In holding that the owner was entitled to indemnity under the facts of that case, the court reasoned:

Here liability of the defendant owner and general contractor arises from its failure to protect the plaintiff adequately from the danger which might reasonably be apprehended from the operation of the hod hoist. It did not participate in the negligent operation of the hoist. Its own negligence was, at most, passive in failing to take more precautions against such operation. In the absence of a contractual obligation by the operator of the hod hoist, assuming sole responsibility for the results of its own negligence, the question

of ultimate liability as between the two defendants might be debatable . . . . Here the contractor did by express agreement assume such responsibility.

\* \* \* \* \* \*

. . . Enough that the contractor's obligation plainly covers injuries caused by the contractor's negligence in which the owner did not participate, and where the owner's negligence, if any, was only passive and in the performance of a duty owed, not to the contractor, but to the injured party.

The importance of the distinction between active or primary negligence on the one hand and passive negligence on the other in cases of this character was again emphasized in Walters v. Rao Electrical Equipment Co., 289 N.Y. 57, 43 N.E.2d 810, where the court stated:

The general contractor and the subcontractor were joint active tort feasors. Thompson-Starrett Co. v. Otis Elevator Co., supra, 271 N.Y. 36 pp. 40, 43, 44, 2 N.E.2d 35. The case of Dudar v. Milef Realty Corp., 258 N.Y. 415, 180 N.E. 102, is not in conflict. There there was no defect in the hod hoist and no violation of statutory obligation with reference to it. It was the negligent operation of the hoist which constituted the active negligence.

In Boston & M. R. R. v. T. Stuart & Son, 236 Mass. 98, 127 N.E. 532, a traveler was injured when he fell over one of a row of stakes driven by the engineer of the railroad at the request of the contractor for the purpose of defining a street line. The injured party sued and recovered against the contractor and the railroad on a jury finding of negligence in leaving the stake unprotected. In a subsequent suit by the railroad against the contractor for indemnity, the court recognized the rule that an intent to indemnify one against his own negligence "must unequivocally appear." It nevertheless held that the railroad was entitled to indemnity since the injured party's recovery against the railroad was based solely on the latter's responsibility to the traveling public for the neglect of the contractor. The court also pointed out that the failure to protect the stake was a breach of duty owed by the contractor to the railroad under its contract.

The Supreme Court of North Carolina reached the same conclusion on somewhat similar facts in Commissioners of Lexington v. Aetna Indemnity Co., 155 N.C. 219, 71 S.E. 214. The plaintiff, who was injured when he fell into a trench dug by the contractor across a sidewalk, recovered judgment against the contractor and the town. According to the jury's findings, the contractor was negligent in digging the trench and in failing to safeguard it properly and the town was negligent in failing to safeguard the trench by lights or barriers. In holding that the contractor was obligated to indemnify the town despite the latter's negligence, the court pointed out that the construction company was the author of the injury and the principal wrongdoer. "As between it and the town, the latter has committed no wrong."

In Hartford Accident & Indemnity Co. v. Worden-Allen Co., 238 Wis. 124, 297 N.W. 436, the indemnity agreement covered damages and injuries "due to, arising from, or connected with" the contractor's operations on the job. An employee of the contractor, who was injured while working under the contract, recovered a judgment against the owner on the theory that the latter had violated the safe-place statute. It was held that the owner was entitled to indemnity from the contractor, and the court stated:

. . . We have been able to discover no situation in which the indemnity contract would have any meaning or purpose if it were not to cover such a default by Seaman [the owner] as is here involved. As we have heretofore suggested, it may be that the contract does not cover cases in which the sole proximate cause of the injuries resulted in Seaman's liability were defaults on the part of Seaman wholly uncontributed to by Worden. A

strong argument can be made to the effect that such a case is not covered by the indemnity, but we need not decide this question because it is not here under the facts of this case.

The authorities offer substantial support for our conclusions here, although there is a conflict in the cases. We are cited to no Wisconsin case which is binding upon us. The cases which state what appears to us to be the better rule make a distinction between active and passive negligence.

A contract similar to the one involved in the present case was considered in Employers Mutual Liability Ins. Co. of Wis. v. Griffin Construction Co., Ky., 280 S.W.2d 179. It was held that the contractor was not obligated to indemnify the owner, because there was no contention that the contractor was negligent. The court expressed the opinion, however, that the "proper construction of this provision is that the defendant would hold Inter-County harmless if its negligence was the sole or primary cause of the injury."

If there were no contract of indemnity, petitioner would clearly be entitled to common law indemnity against respondent upon showing that while petitioner was guilty of passive negligence in some respect, respondent breached a duty owing not only to McDonald but also to petitioner. City of Amarillo v. Stockton, 158 Tex. 275, 310 S.W.2d 737; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609; Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995; Austin Road Co. v. Pope, 147 Tex. 430, 216 S.W.2d 563; Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449. Since McDonald was an employee of respondent, any right of common law indemnity is precluded by the provisions of Art. 8306, Sec. 3, Vernon's Ann.Civ.St. The holding in the present case will apply, however, in a situation where the injured party is not an employee of the indemnitor. We will thus be saying that a contract to indemnify against liability for injuries caused by the negligence or fault of the indemnitor affords less protection than the common law does under the same circumstances. The question will then arise as to whether the right to common law indemnity has been impliedly abrogated by the contract.

The facts of the present case have not been developed, and it may be assumed for the purpose of this opinion that petitioner's only fault was in failing to take some precaution that would not have been required if respondent had done its work properly and in accordance with the contract. As pointed out by the dissenting opinion in *McCann*, the parties could not have intended for the indemnity agreement to be entirely meaningless. On the basis of the facts now assumed and in view of the relationship of the parties and the subject matter of the contract, it is my opinion that this is one of the cases intended to be covered by the agreement. That is not to suggest that the decision in City of Beaumont v. Graham, Tex.Sup., 441 S.W.2d 829, is unsound. The death of the workman there was caused by the primary negligence of the indemnitee in failing to inspect the premises and discover the hidden danger. This duty was owing to the indemnitor and its employees, who had done nothing to create the danger, and the duty should have been performed before any work was done under the contract. The facts of the case were thus quite different from those in the present case. I would hold that petitioner is entitled to indemnity under the contract if it appears that petitioner was guilty only of passive negligence in failing to discover, or warn of, or protect against, some hazard resulting from active or primary negligence on the part of respondent or the latter's breach of some duty owing to petitioner.

REAVLEY, J., joins in this concurring opinion.