**CITY OF BEAUMONT, Appellant,**

v.

**Mary Ruby GRAHAM et al., Appellees.**

**No. 6939.**

Court of Civil Appeals of Texas.

Beaumont.

Dec. 28, 1967.

Rehearing Denied Jan. 24, 1968.

Benckenstein & Norvell, Beaumont, for appellant.

Ernest Sample, Orgain, Bell & Tucker, Fred Carver, Beaumont, for appellees.

STEPHENSON, Justice.

This is an action for damages resulting from the death of James Columbus Graham, Jr., who was fatally injured when he fell in an elevated water storage tank belonging to the City of Beaumont. Plaintiffs are the surviving wife and children of the deceased. Defendant, City of Beaumont, sought indemnity and contribution from Texas Tower and Construction Company, who was Graham's employer. Texas Tower and Construction Campany had a contract with the City of Beaumont to make certain repairs to the water tank, and was so engaged at the time of this fatal accident. Trial was by jury, and judgment was rendered for plaintiffs against defendant, City of Beaumont, and also that City of Beaumont recover nothing against the

third party defendant. The parties will be referred to here as they were in the trial court.

Plaintiff, in their petition, alleged that deceased was a business invitee while engaged in performing work on the water tank, and that defendant, City of Beaumont, was negligent in many respects proximately causing Graham's death. The jury found: That the failure of defendant, City of Beaumont, to have the anchor plates or bracket assemblies enlarged and secured prior to the commencement of the sandblasting operations was negligence and a proximate cause of the fatal injuries; that the wall of the water tank had become so deteriorated at the place where the bracket assembly pulled through, as to constitute a dangerous condition, which defendant, City of Beaumont, could have discovered in the exercise of ordinary care, and failed to warn the deceased of the condition which was negligence and a proximate cause of the fatal injuries; that defendant, City of Beaumont, failed to have a safety grating installed which was negligence and a proximate cause of the fatal injuries; that defendant, City of Beaumont, failed to make a proper inspection of the bracket assemblies and tie-down rods prior to the commencement of the sandblasting, which was negligence and a proximate cause of the fatal injuries; that defendant, City of Beaumont, failed to adopt a periodic and systematic program of inspection of this water tank, which was negligence and a proximate cause of the fatal injuries; that the repair and replacement of such bracket assemblies was omitted from the original contract between the City of Beaumont and Texas Tower and Construction Company; that the condition of such bracket assemblies rendered the tank unsafe for the performance of the work under such contract; that the City of Beaumont failed to examine, inspect and report the condition of such bracket assemblies which was negligence and a proximate cause of the fatal injuries; and that defendant, City of Beaumont, failed to exercise ordinary care

to provide a reasonably safe structure for the performance of the work to be covered by the contract, which was negligence and a proximate cause of the fatal injuries. The jury answered in the negative an issue asking if the defendant, City of Beaumont, did not have the right to control Texas Tower and Construction Company in the details to be performed in the repair of the water tank.

There are certain general principles of law which must be kept in mind while considering this case. An occupier of premises is required to keep his premises in a reasonably safe condition for his invitees. When a danger is not open and obvious, the occupier owes a duty to the invitee to warn the invitee of the danger, if the occupier knows about it or in the exercise of ordinary care should know about the danger. There is a duty on the occupier to inspect and discover dangerous conditions. Halepeska v. Callihan Interests, Inc. (Tex.) 371 S.W.2d 368.

Defendant, City of Beaumont's, first series of points are that there was no evidence to support the findings of the jury that such defendant committed certain acts, or failed to act in certain ways, which constituted negligence and were each a proximate cause of the fatal injuries to James Columbus Graham, Jr. Passing upon these points, the court considers only the evidence favorable to such findings. It appears to this court that one of the primary set of issues upon which the judgment of the trial court is based was that the wall of the water tank had become so deteriorated at the place where the bracket assembly pulled through as to constitute a dangerous condition, which defendant, City of Beaumont, could have discovered in the exercise of ordinary care, and failed to warn the deceased of such condition which was negligence and a proximate cause of the fatal injuries.

The fatal fall made the basis of this suit was inside the bowl of a 500,000 gallon steel

water storage tank located on Pine Street in the City of Beaumont. Deceased was employed by defendant, Texas Tower and Construction Company, as a painter, which classification included both painting and sandblasting work. He was not employed to replace the spider rods as that work would be done by a separate craft. The deceased was engaged in a sandblasting operation on the interior of this tank at the time of his fall. This operation was performed by starting at the top of the bowl and sandblasting a strip of the wall from the top of the bowl to the bottom. The deceased would sit in a bosun chair which was suspended by a rope and would let himself down toward the bottom of the bowl as he sandblasted the section of the strip he was doing. As a strip was completed at the bottom of the bowl, the equipment would be moved over and a new start would be made at the top of the bowl. There were steel rods called tie rods or spider rods which were attached to the center of the bowl and which ran parallel to the ground to the sides of the bowl where they were attached to the sides by brackets. These rods were located near the top of the bowl and were used in this sandblasting operation to support boards upon which deceased would lie as he moved his equipment from one spot to another in beginning a new strip. When a strip was completed, deceased would climb back to the top of the bowl by ladder, and a second workman would pull the bosun chair back up to the top of the bowl by rope, so it could be moved to another location. A strip had just been completed and deceased had crawled back up the ladder and the second workman had pulled the bosun chair up to the top when the fall occurred. The deceased was off of the ladder but had not had time to move the rigging and get back into the bosun chair at the time of the fall. The deceased fell about 40 feet to the bottom of the bowl and then down into a large pipe, called a riser, connecting the bowl with the ground. Deceased then fell almost 100 feet inside the riser to near the ground.

The evidence also showed: that the deceased suffered his fall because the wall of the water tank collapsed allowing one of the brackets to pull through; that this bracket was at the end of one of the tie rods upon which the board or boards was or were lying. The wall of the tank was about a quarter of an inch thick at the spot it had pulled through. The thinning of the wall had been caused by rust and corrosion. The wall of the tank should have been tested by tapping on it with a hammer. This would have revealed soft spots or weak spots. Weak spots would have a dead sound, as solid steel would have a ring. Another better way to test the walls would be to drill holes and measure it to see how thick it is. It was admitted that no warning was given to the deceased or his employer, that there was any danger of the bracket pulling through the wall of the tank because of the deteriorated condition. It is also admitted that the condition causing this fatal fall was not "open and obvious."

The records show the water tank in question was constructed in 1923 and was, therefore, about 40 years old at the time of this fall. The roof of the tank may have been replaced in 1938 or 1939, but there is no record of it in the City files. This work may have included the spider rods or part of them. There was no evidence that the brackets had ever been replaced. In 1954, some wire brushing, chipping and handscraping was done and the interior of the tank was painted. There is no record in the files of the City of any inspection being made of the tank from 1954 to 1961. In 1961, Johnny R. Allen had been doing other work for the City and made an inspection of the tank, for which he was not paid. This report is dated August 11, 1961, and is signed "Allen's Tower Service, Johnny R. Allen." No work was done at that time. In 1963 the City contacted John Allen and requested to make an inspection of this tower, and April 4th, 1963 a written report was made to the City signed "All Towers, Inc., Johnny R. Allen, President."

Bids were taken on work to be performed on this tank, and on July 17, 1963 a contract was executed between the City of Beaumont and Texas Tower and Construction, Inc., signed by its President, John R. Allen. John R. Allen testified as a witness in this case: That the thing that caused this accident was a hidden thing; that the brackets and the bolts attaching them were covered, the inside being coated with grease and the outside by paint; that the bracket looked good; the wall of the tank was weakened by oxidation even though you couldn't see it.

> The wall of the tank was rotten and there is no way of telling that, your rust builds up, this was before the tank was cleaned. You have got a coat of rust in some spots an inch thick, corrosion and other forms of matter, and there is no way to tell by looking at one of them if it is faulty or not but the brackets themselves were not faulty.

> There was a pretty good coat of paint on the outside and you couldn't tell whether it was oxidized or not underneath.

■ All of this evidence supported the findings of the jury that the condition of the wall of the water tank was dangerous, which condition could have been discovered by the defendant of the City of Beaumont in the exercise of ordinary care, and that the failure to warn the deceased of such condition was negligence and a proximate cause of the fatal injuries. The no-evidence points are overruled as to these findings of the jury.

■ Defendant, City of Beaumont, had points of error that the findings of the jury mentioned above were against the great weight and preponderance of the evidence and that the evidence was insufficient to support such findings. In passing upon these points, we considered the entire record. There is evidence in the record contrary to that set forth above, but such evidence did no more than raise questions of fact for the jury, which the jury determined adversely to this defendant. These findings are not clearly wrong or manifestly unjust and the points of error are overruled.

Defendant, City of Beaumont, has points of error that there is no evidence to support a finding of the jury that the fatal fall was not caused by transitory conditions arising out of the work contracted to be performed by defendant, Texas Towers and Construction Company, and also that the defect that caused the fatal accident was a defect contracted to be repaired by such defendant. The case of Wood v. Kane Boiler Works, Inc., 150 Tex. 191, 238 S.W.2d 172, 173 is cited as authority for the proposition that the possessor of land owes no duty to protect an independent contractor or his employees from dangers arising from the performance of the work which the contractor was employed to do.

■ The contract between the City of Beaumont and Texas Towers and Construction Company was admitted in evidence. Such contract provided for the replacement of six support rods and eight spider rods. No mention was made of bracket assemblies or the wall of the tank, except that the interior of the tank should be cleaned, sandblasted and coated with a compound. A change order between the City of Beaumont and Texas Towers and Construction Company dated August 15, 1963, was admitted in evidence for the limited purpose of showing the scope of the contract. This change order was after the fatal fall, and showed the reason for such change was "additional work not called for in the original contract." This change order included an item to furnish and install 12 tie down bracket assemblies. John R. Allen testified by bill of exception that the decision to replace the bracket assemblies was made after Graham had his accident. He also testified that the replacement of the spider rods would not have prevented this accident, and that the part of the structure that gave way was not even included in the work that was to be performed. This case is distinguishable from

the line of cases in which the injured party was present to repair the condition which resulted in the injury, and the cases where the injured party was employed to inspect and repair. Allen testified as follows:

> They didn't ask me for anything but a visual inspection and a visual inspection is what you can tell just by looking at it. If they wanted a general inspection I would have cut out samples of metal and had it tested.

There is no evidence in the record that the reason for this fatal fall, the deterioration of the wall of the tank by rust and corrosion, developed during the performance of the work and as a result of this work being performed. Such condition developed over the 40 year life of such water tank. The evidence supported the findings of the jury and the points of error are overruled.

■ The jury found that Graham failed to use a safety belt, but that such failure was not negligence. The proximate cause issue was not answered as it was predicated upon an affirmative answer to the negligence issue. Defendant, City of Beaumont, has a point of error that there was no evidence to support the finding of the jury that such failure was not negligence. This defendant argues the deceased knew the condition of the tank because he could see the holes in the roof. It must be remembered that the roof was not constructed with steel as heavy as that used in the walls of the water tank, and that none of the equipment used was attached to the roof. The evidence shows John Allen warned the deceased not to put any weight on the spider rods and to use the brackets for rigging. The evidence further shows that the deceased followed these instructions. The fatal fall occurred not because a spider rod was weak and came in two, but because one of the brackets pulled through the wall of the tank. The evidence also shows the deceased could not see the rust spots. Graham was experienced in tank work as a painter, but was not as an iron

worker. There is no evidence that Graham did not use all of the equipment customarily used by workmen doing similar jobs, and there is no evidence that he did not perform his work in the usual and customary manner. This point is overruled.

■ Defendant, City of Beaumont, has points of error that there was no evidence to support the finding of the jury that plaintiff, Mary Ruby Graham, sustained damages in the amount of $140,000.00 by reason of the death of her husband, that there was insufficient evidence to support such finding, that such finding was contrary to the great weight and preponderance of the evidence and that such amount is excessive. The evidence shows: Graham was 37 years old at the time of his death, with a life expectancy of 35 years. He had fully recovered from his nervous breakdown at the time of his fatal fall and was in good health. He worked regularly, was a good provider with an excellent attitude of responsibility toward his family. He was a good reliable workman and was secretary of the painter's local. His pay was $3.87½ per hour, or $30.00 per day or $150.00 per week, plus time and a half for overtime. This evidence supported the finding of the jury, the finding of the jury was not clearly wrong or manifestly unjust, and such finding was not excessive.

■ As already stated in this opinion, one defense relied upon by defendant, City of Beaumont, that the defect that caused the fatal accident was a defect contracted to be repaired. Plaintiffs denied this and tendered in evidence the change order dated August 15, 1963. The trial court refused to admit such exhibit in evidence until the close of the testimony at which time it was admitted for the limited purpose of showing the scope of the contract between this defendant and Texas Tower and Construction Company. The jury was instructed not to consider such evidence or the question of negligence. One of the attorneys for plaintiff argued in connection with special issue 20 which inquired as to

whether the replacement of the bracket assemblies was omitted from the original contract, and read from such change order. Then this attorney made this argument:

> Now did this failure to include it in the original contract, did that contribute to the lack of safety in the structure of this tower? Of course it did, so you must answer this "yes."

Counsel for defendant, City of Beaumont, objected on the ground that the exhibit was being used for the purpose that the court instructed the jury they could not consider. It is not easy to follow the argument being made by the attorney in reference to the issue he was discussing, but it appears that the argument was not improper, and in any event that no harm was done.

■ At the close of his argument in connection with one of the damage issues, it was stated:

> I just don't know how you'd measure the value of a life of a man. And I can't and don't think any of the other attorneys can come up with any concrete suggestion and that's why I say its entirely up to you. I know this, we are all taught right from wrong from childhood on, and at this point insofar as money is concerned, I don't know what's right and what's wrong. I guess its—looking at this whole case its a situation that the Golden Rule would apply to. "Do unto others as you would have them do unto you." I'm not asking you to put yourself in this family's place—.

The objection was made that the Golden Rule argument "Do unto others as you would have them do unto you" was improper. The trial court overruled this objection. We have concluded there is no reversible error in this argument. The attorney makes it clear that he is not asking this jury to put themselves in this family's place, but merely to apply the golden rule, which has been interpreted to mean the jury should look with solicitude to the rights of both plaintiff and defendant.

■ Defendant, City of Beaumont, complains of the actions of the trial court in granting judgment for All Towers, Inc., and in not granting judgment against the City of Beaumont and All Towers, Inc., jointly and severally. The jury found: That the City of Beaumont contracted with All Towers, Inc., that All Towers, Inc. would make an inspection of the water tank; that Johnny R. Allen made the inspection in April 1967 as an officer, agent or employee of All Towers, Inc., and within the scope and course of his employment; that All Towers, Inc. failed to make a proper inspection of the bracket assemblies and tie down rods which was negligence and a proximate cause of the fatal injuries; and that the failure of All Towers, Inc. to recommend the replacement and reinforcement of the tie-down bracket assemblies prior to the commencement of the work was negligence and a proximate cause of the fatal injuries. Plaintiffs had sued All Towers, Inc., as a defendant, and alleged certain acts of negligence as proximately causing the fatal injuries. Defendant, City of Beaumont, did not plead against All Towers, Inc., and did not seek contribution. Plaintiffs permitted the judgment of the trial court in favor of All Towers, Inc. to become final, as no appeal was taken by plaintiffs. Under these circumstances, defendant, City of Beaumont, has no standing in this court to complain of the failure of the trial court to render judgment in favor of plaintiffs against All Towers, Inc.

Defendant, City of Beaumont, contends the trial court erred in rendering judgment that the City of Beaumont recover nothing from Texas Tower and Construction Company. City of Beaumont filed a third party action, alleging that the fatal injury was proximately caused by the negligent acts of this third party defendant, and seeking both indemnity and contribution based upon the contract between these parties.

Such contract contained the following provision:

> The Contractor agrees to further indemnify and save the City whole and harmless from all costs, expenses, damages, arising out of any real or asserted cause of action and permitting all costs arising from wrongs, injuries, damages that may be occasioned to any person or property or to its employees, arising out of his acts in connection with the construction of the said improvements or occasioned by said Contractor, his agents, servants or employees.

The jury found: That Texas Tower and Construction Company failed to do the work in the order specified in the contract, which was negligence and a proximate cause of the accident made the basis of this suit; that Texas Tower and Construction Company failed to replace the eight spider rods in the interior of the tank before sandblasting the inside of the water tank, which was negligence and a proximate cause of the accident; and that Texas Tower and Construction Company failed to warn James Columbus Graham, Jr. of the condition of the spider rods, which was negligence and a proximate cause of the accident.

Defendant, City of Beaumont, had no claim at common law for indemnity against Texas Tower and Construction Company, so the only basis for its claim must be upon the written contract between these parties. This contract, having been prepared by the City of Beaumont, in case of doubt or ambiguity, must be construed against the City. Also, this contract is one primarily for the accomplishment of work, and the indemnity provision is incidental to the principal objective. We do not find it was the clear intention of the parties to require Texas Tower and Construction Company to indemnify the City of Beaumont for damages arising out of the negligent acts of the city or for damages arising out of the joint negligence of the parties.

We hold this case to be controlled by the law expressed in Humble Oil & Refining Co. v. Wilson, Tex.Civ.App., 339 S.W.2d 954.

We find no merit to the remainder of the 124 points of error and they are overruled.

Affirmed.