**W. R. GRIMSHAW COMPANY,**
**Plaintiff,**

**v.**

**MARTIN WRIGHT ELECTRIC COM-**
**PANY, Defendant.**

**Civ. A. No. 66–99–SA.**

United States District Court
W. D. Texas,
San Antonio Division.

April 10, 1968.

As Revised April 22, 1968.

Alfred W. Offer, Law Offices of Carl Wright Johnson, San Antonio, Tex., for plaintiff.

Jack Hebdon, Groce, Hebdon, Fahey & Smith, San Antonio, Tex., for defendant.

## OPINION

SPEARS, Chief Judge.

Plaintiff, W. R. Grimshaw Co. (hereinafter referred to as Grimshaw), has brought this suit seeking recovery from defendant, Martin Wright Electric Co. (hereinafter referred to as Wright), certain sums alleged to be due and owing by the defendant, pursuant to a contract of indemnity. Having concluded that there is no genuine issue as to any material fact, and that plaintiff is entitled to judgment as a matter of law, its motion for summary judgment will be granted.

On the 18th day of October, 1960, Grimshaw entered into a written contract with Community Realty Co., whereby Grimshaw, as general contractor, agreed to furnish all materials and perform all labor for the complete construction of Wonderland Shopping Center at San Antonio, Texas.

Subsequently, on November 22, 1960, Grimshaw entered into a sub-contract with Wright wherein the latter agreed to furnish all the materials, tools and labor necessary for the completion of certain electrical work on the Wonderland complex.

Among other things, the agreement contained the following indemnity provision:

" * * * and sub-contractor, notwithstanding any insurance that may be provided for or carried, agrees to hold Contractor harmless from any loss, injury or damage, either to persons or property, arising out of or resulting from the performance by sub-contractor of the work covered by this sub-contract or occasioned by the act or neglect of sub-contractor or his agents, servants or employees."

In furtherance of the indemnity, the agreement required that the sub-contractor maintain workmen's compensation, as well as automotive liability and public liability, insurance.

In addition, the agreement provided that the sub-contractor would keep the complex " * * * free and clear of mechanics liens or other encumbrances arising by (his) act or contract and shall, at (his) sole cost and expense, defend against any claim, lien, suit or proceeding that may be presented or filed arising out of and in the course of (his) performance of this sub-contract."

The undisputed facts here are as follows:

On the evening of July 24, 1961, Wright, pursuant to its sub-contract, was

engaged in certain electrical work at the Wonderland Shopping Center. The electricians, one of whom was Elmore C. Zoller, had been working on the second level of the complex. After the work was finished, the employees, including Zoller, went to the basement level to store their tools in a shed furnished by Grimshaw. Zoller was in the process of leaving the premises when he tripped on a piece of wire mesh and fell, striking his head on an upright steel reinforcement rod which pierced his right eye. As a proximate result of the injuries which he sustained, Zoller died on August 1, 1961.

The evidence clearly indicates that the lighting in the area where Zoller fell was poor. The majority of the light in and around the tool shed was furnished by some flourescent lights which were located in the tool shed itself. However, when the tool shed was closed and locked at night to protect its contents, the result was a darkening of the area around the shed.

On July 12, 1963, a suit was brought against Grimshaw by the widow, Pauline C. Zoller, individually and as Independent Executrix of the Estate of deceased, and as Guardian of the persons and estates of their two minor sons, to recover the damages which they had sustained by reason of the injuries and death of their husband and father. Texas Employers Insurance Association, as workmen's compensation carrier for Wright, intervened as a plaintiff.

Grimshaw, upon commencement of said action, gave notice to Wright of the same, and demanded that it defend the action, but Wright failed to do so.

Upon a trial of the cause before a jury, the claimants therein were awarded a total sum of $110,123.38. The San Antonio Court of Civil Appeals affirmed the judgment, Grimshaw v. Zoller, 396 S.W. 2d 477 (Tex.Civ.App.1965), and Grimshaw was compelled to pay the stipulated amount in satisfaction of the judgment.

The jury, in rendering its verdict, necessarily found negligence against Grimshaw. It found that the lighting in the area where Zoller fell was inadequate, that Grimshaw knew or should have known of its inadequacy, and that the failure to provide adequate light was a proximate cause of Zoller's injuries and subsequent death. It also found that there was wire mesh in the area of the accident, which Grimshaw knew or should have known about, but yet permitted to be in the area, and that this was a proximate cause of Zoller's injuries. In addition, the jury concluded that Grimshaw knew or should have known that the reinforcement rod which caused Zoller's injuries, was not bent over, that Grimshaw failed to bend the rod over prior to Zoller's fall, and that such failure was negligence and a proximate cause of the accident. It did not attribute negligence to any of Zoller's actions that night.

This present controversy arises because of Grimshaw's contention that Wright is liable to it under the above quoted provisions in the sub-contract agreement. Wright, however, takes the position that the agreement does not bind it to indemnify Grimshaw, under the circumstances of this case, against Grimshaw's own negligence (as determined on the trial of the case wherein Grimshaw was named defendant), and that further, Zoller's injuries did not arise out of or result from the performance of the sub-contract by Wright, but rather they occurred at a time when Wright's employee was doing nothing other than walking off the job to go home. Wright further contends that with respect to the situation before this Court coverage by the indemnitor for negligent acts of the indemnitee is neither apparent nor intended.

■   The Court has reviewed the stipulations and the evidence, together with the contract agreement itself, and concludes that the indemnitor, Wright, is liable under the terms of the contract with regard to indemnification.

■■   To begin with, it is apparent that the deceased employee's injuries arose out of or resulted from the performance by Wright of the work covered

by the sub-contract.[1] Generally, the duty owed by a master to exercise ordinary care to protect his servant from injury or death caused by the master's negligence does not cease the instant the servant's working hours are completed but rather, the relationship of master and servant exists for a reasonable time after working hours for the purpose of allowing the servant sufficient time to leave the premises. 76 A.L.R.2d 1228, § 5. In the case of Foster v. Carle, 160 S.W.2d 999 (Tex.Civ.App.1942), writ ref. want of merit, the Court said that the duty of an employer to provide a safe place for his workmen does not terminate immediately upon the workman's ceasing to do the particular thing he was employed to do, but if the employee is upon his employer's premises engaged in the performance of some act having to do with his employment, then the employer is under a duty to protect him from injury.

■ This Court, of course, cannot ignore the jury's finding of negligence against Grimshaw in the suit by Zoller's family. On the contrary, the weight of authority indicates that an indemnitee, in his action to recover from the indemnitor the amounts paid in satisfaction of a judgment obtained against him by an injured person, is bound by all findings without which the judgment could not have been rendered, and that if the judgment in the earlier action rested on a fact fatal to recovery in the action over against the indemnitor, the latter action cannot be successfully maintained. 24 A.L.R.2d 330, § 2; 30A Am.Jur. 475, § 421. Nonetheless, conceding the existence of negligence on the part of Grimshaw, the Court must still conclude that the indemnitor is bound by the provisions of the contract in regard to indemnity.

Wright, the indemnitor-defendant here, argues that indemnity was only incidental to the main purpose of the contract; that the contract was prepared by plaintiff; that the contract is unclear, uncertain, doubtful or ambiguous; and that, under the circumstances of this case, the contract should be construed in favor of the defendant, citing City of Beaumont v. Graham, 423 S.W.2d 105 (Tex.Civ.App.1967), wherein the Court could find no clear intention that the indemnitee be indemnified for damages growing out of the joint negligence of the parties.

■■ In Texas, an ᴜgreement to indemnify an indemnitee against the consequences of his own negligence is not contrary to the public policy of the state. Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775, 779 (1957). While indemnity contracts are strictly construed against the indemnitee, and the liability of the indemnitor cannot be extended beyond the express terms of the contract, the Supreme Court of Texas has said that it is not necessary for the parties to say in so many words that they intend to protect the indemnitee against liability for negligence, it being sufficient if it clearly appears from the agreement that such was the intention of the parties. Mitchell's, Inc. v. Friedman, supra. This same position was stated another way by that Court in the recent case of Ohio Oil Co. v. Smith, 365 S.W.2d 621 (1963), wherein it was pointed out that " * * * in owner-contractor situations, judicial construction of indemnity clauses to cover the indemnitee's negligence, notwithstanding absence of an express provision to that effect in the contract, has been said to be common."

---

1. The Fifth Circuit in Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co. of Wisconsin, 189 F.2d 374 (5 Cir. 1951), stated, with respect to the phrase "arising out of", that it contains "words of much broader significance than 'caused by'. They are ordinarily understood to mean ' "originating from", "having its origin in", "growing out of" or "flowing from" ', or in short, 'incident to, or *having connection with*', * * *." (Emphasis supplied).
See also: Turner Construction Co. v. Belmont Iron Works, 158 F.Supp. 309 (E.D.Penn.1957); Hartford Acc. & Ind. Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11 (1940).

632

This is not a new ruling. One of the earliest Texas Supreme Court cases dealing with this issue, Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204 (1920), involved a contract provision under which a brick company agreed to save a railroad "harmless from any and all claims for damages" arising out of the construction, operation and maintenance of a spur track leading to the brick company's plant. In rejecting the argument that there would be no indemnity against the railroad's own negligence, the Court stated: "[T]his section would be inoperative and rendered meaningless if construed to exclude negligence, as a claim for damages against the railroad company growing out of any of these things could have no standing in a court unless predicated upon the negligence of the railroad company, or its servants. The section must, we think, be construed as contemplating claims for damages founded upon such negligence."

In the case of Macon v. Warren Petroleum Co., D.C., 202 F.Supp. 194, 197, affirmed, Alamo Lumber Co. v. Warren Pet. Co., 5 Cir., 316 F.2d 287, where a similar situation was presented, this Court, in holding that the deceased employee's injuries clearly arose in connection with his activities while performing the work of the indemnitor under its contract with the indemnitee said: "To require that there be a causal connection between their 'activities' and the thing that produced the injuries, would be to place a highly restricted meaning upon the term and to read into the agreement words that simply are not there. It is unnecessary to look beyond the express terms of the contract itself to see that the parties intended that Warren (the indemnitee) should be indemnified by Alamo (the indemnitor) for any loss sustained as a result of injuries to Alamo's employees, even though they resulted from Warren's own negligence."

█ A final point that is raised by the parties is in regard to the allowance of reasonable attorney's fees incurred with respect to the prosecution of this suit to recover on the contract of indemnity. Application is here made of the general rule that such fees cannot be recovered in the absence of an express provision therefor in the indemnity agreement. Rublee v. Stevenson, 161 S.W.2d 528 (Tex.Civ.App.1942). No such provision is found in the contract of indemnity, therefore, the Court must conclude that they are not allowable.

Judgment will accordingly be entered in conformity with the views hereinabove expressed.