**CITY OF BEAUMONT, Petitioner,**

**v.**

**Mary Ruby GRAHAM et al., Respondents.**

**No. B–758.**

Supreme Court of Texas.

April 16, 1969.

Rehearing Denied June 4, 1969.

Benckenstein & Norvell, John H. Benckenstein, Beaumont, for petitioner.

Ernest L. Sample, Orgain, Bell & Tucker, David Kreager and John G. Tucker, Beaumont, for respondent.

CALVERT, Chief Justice.

Respondents are statutory wrongful death beneficiaries of James Columbus Graham,

Jr. Graham was fatally injured when he fell while working in an elevated water storage tank belonging to the City of Beaumont. At the time of his fall, Graham was an employee of Texas Tower and Construction Company which had a written contract with the City to make certain repairs to the water tank. Respondents sued the City and All Towers, Inc., for damages resulting from Graham's death. The City of Beaumont filed a third party action against Texas Tower and Construction Company, Graham's employer, seeking indemnity or, alternatively, contribution. Trial was to a jury on some one hundred and twenty-five fragmented special issues. The trial court rendered judgment awarding the plaintiffs a recovery from the City of damages as found by the jury, denying them a recovery from All Towers, Inc., and denying the City a recovery of either indemnity or contribution from Texas Tower and Construction Company. Only the City appealed, and, accordingly, All Towers, Inc. went out of the case. The court of civil appeals affirmed. 423 S.W.2d 105. We affirm.

Petitioner will be referred to in this court as City, and respondents will be referred to as the Grahams or plaintiffs and Texas Tower.

As incredible as it may seem, City presented one hundred and twenty-four points of error in its appellant's brief in the court of civil appeals, and one hundred and forty-two assignments of error in its motion for rehearing in that court. Its application to this court for writ of error contains thirty-two points of error. The thirty-second point complains of the failure of the court of civil appeals to respond to City's request for forty-four additional "fact findings", said by City to be material to a disposition of the case and not to be found in the court's eleven page opinion. The complaint is keyed to Rules 453 and 455, Texas Rules of Civil Procedure. Rule 453 requires courts of civil appeals to make and file "conclusions of fact and law upon each material point assigned as error" in cases decided by such courts in which the Supreme

Court has jurisdiction of an application for writ of error. Rule 455 reads as follows:

"If either party to a case, decided by a Court of Civil Appeals, shall be of the opinion that the findings of fact are insufficient upon any material issue assigned in that court as error, such party may, in his motion for rehearing, specify the point upon which there is no finding of fact, or upon which the finding made by the court is insufficient, and ask said court to make and file conclusions of fact upon the points indicated in the motion. If the court refuses to make such findings, or if the finding made be insufficient, such action may be assigned as error in application to the Supreme Court for writ of error."

As this court observed some sixty-five years ago, at a time when the substance of Rules 453 and 455 was contained in statutes, "[a] grave misconception seems to be entertained" by attorneys concerning the duty imposed on courts of civil appeals by the quoted provisions. Nowlin v. Hall, 97 Tex. 441, 79 S.W. 806 (1904). In so far as Rule 453 requires conclusions or findings of fact, it requires only that a court of civil appeals file conclusions or findings that the evidence in a particular case is or is not factually sufficient to support express or implied trial court or jury findings on vital ultimate issues made by the pleadings and evidence. Nowlin v. Hall, supra. The rule does not contemplate or require that a court of civil appeals make evidentiary findings or that its opinion repeat all of the evidence or all of the trial court findings which appear elsewhere in the record. Manchester Fire Ins. Co. v. Simmons, 12 Tex.Civ.App. 607, 35 S.W. 722 (1896, writ ref'd). Manchester was cited with approval in Nowlin v. Hall, supra. And see Construction and General Labor Union, Local No. 688 v. Stephenson, 148 Tex. 434, 225 S.W.2d 958, at 963 (1950). Indeed, as this court pointed out in Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164 (1948), courts of civil appeals have no jurisdiction to make original find-

ings of fact in cases on appeal; they can only "unfind" facts. 38 Texas L.Rev. 361, at 368.

■ Of the forty-four requests made by City for "findings", nine are for evidentiary recitations, twenty-eight are for recitation or repetition of jury findings appearing in the transcript, five are for undisputed and uncontroverted conclusions of mixed fact and law, and the other two are for original findings which the court had no jurisdiction to make. City's thirty-second point is overruled.

■ City's first nineteen points are briefed together and are characterized in the application as "no evidence" points. We did not grant the writ on these points, but City is entitled to have them considered and decided. The points and the argument under them present these basic contentions: (1) the evidence establishes, as a matter of law, that Texas Tower, Graham's employer, was an independent contractor; (2) City owed no duty of care to Graham; (3) if City owed a duty to Graham, the jury's answers to special issues A, B, and C establish that City did not breach its duty; and (4) if City owed a duty to Graham, there is no evidence to support the jury findings that City breached its duty. We will undertake to dispose of the contentions in the order in which they are listed.

■ Plaintiffs alleged in their trial petition that, at the time of his fatal injuries, Graham was working in the storage tank as Texas Tower's employee and as City's business invitee. The allegation could be true only if Texas Tower was an independent contractor. With the parties thus in agreement that Texas Tower was an independent contractor, we need not concern ourselves with the evidence or jury findings bearing on that issue, and we will assume that Texas Tower was an independent contractor.

The other three listed contentions cannot be fully understood or adequately evaluated without a statement of relevant background facts. The following statement of facts is taken from the opinion of the court of civil appeals and is undisputed.

"The fatal fall made the basis of this suit was inside the bowl of a 500,000 gallon steel water storage tank * * *. Deceased was employed by defendant, Texas Tower and Construction Company, as a painter, which classification included both painting and sandblasting work. He was not employed to replace the spider rods as that work would be done by a separate craft. The deceased was engaged in a sandblasting operation on the interior of this tank at the time of his fall. This operation was performed by starting at the top of the bowl and sandblasting a strip of the wall from the top of the bowl to the bottom. The deceased would sit in a bosun chair which was suspended by a rope, and would let himself down toward the bottom of the bowl as he sandblasted the section of the strip he was doing. As a strip was completed at the bottom of the bowl, the equipment would be moved over and a new start would be made at the top of the bowl. There were steel rods called tie rods or spider rods which were attached to the center of the bowl and which ran parallel to the ground to the sides of the bowl where they were attached to the sides by brackets. These rods were located near the top of the bowl and were used in this sandblasting operation to support boards upon which deceased would lie as he moved his equipment from one spot to another in beginning a new strip. When a strip was completed, deceased would climb back to the top of the bowl by ladder, and a second workman would pull the bosun chair back up to the top of the bowl by rope, so it could be moved to another location. A strip had just been completed and deceased had crawled back up the ladder and the second workman had pulled the bosun chair up to the top when the fall occurred. The deceased was off of the ladder but had not had time to move the rigging and get back into the bosun

chair at the time of the fall. The deceased fell about 40 feet to the bottom of the bowl and then down into a large pipe, called a riser, connecting the bowl with the ground. Deceased then fell almost 100 feet inside the riser to near the ground.

"The evidence also showed: that the deceased suffered his fall because the wall of the water tank collapsed allowing one of the brackets to pull through; that this bracket was at the end of one of the tie rods upon which the board or boards was or were lying. The wall of the tank was about a quarter of an inch thick at the spot it had pulled through. The thinning of the wall had been caused by rust and corrosion. * * * "

■■ Plaintiffs seek to predicate liability of City upon breach by it of the duties of care owed by an owner or occupier of land to a business invitee. Stated generally, these duties require elimination, or warning to the invitee, of hidden conditions which are unreasonably dangerous and which are known to the owner or occupier but are unknown to the invitee. They also require an owner or occupier to make such an inspection of the premises to discover hidden dangers as would be made by a reasonably prudent person in the exercise of ordinary care. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup., 1963); McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950). City insists, however, that the facts in this case bring it within an exception to the foregoing general rule, which exception is stated in an annotation in 31 A.L.R.2d 1375, at 1381, as follows:

"[A]s an exception to the general rule requiring the owner or occupier of premises (contractee) to furnish a safe place of work to an independent contractor and the latter's employees, the owner or occupier is under no duty to protect them against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair."

The annotation follows a decision by the Supreme Court of Missouri in Hammond v. City of El Dorado Springs, 362 Mo. 530, 242 S.W.2d 479, 31 A.L.R.2d 1367, (1951), in which the court held that the city was not liable for damages for injuries to an employee of an independent contractor whose contract provided for "repair" by the contractor of an elevated water storage tank owned by the city. The employee was injured when defective spider rods broke under his weight and he fell. The court held that the contractor and his employees assumed the risk of all defective conditions, inasmuch as the contract required them to repair all such conditions. This court recognized the exception to an owner's or occupier's duty to an invitee and discussed it at some length in Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951). We also recognized that the rationale of the exception rested upon the doctrine described by the Latin phrase "volenti non fit injuria", perhaps better described for our purposes in the English phrase "voluntary exposure to risk". It is but an extension to an employer-independent contractor relationship of the doctrine of assumed risk applied in similar factual situations in master-servant relationships. See City of Teague v. Bradford, 63 S.W.2d 376 (Tex.Com.App., 1933, opinion approved).

■■ In deciding whether the facts in this case bring it within the exception, the provisions of the contract between City and Texas Tower become of controlling importance. The contract is much too long to copy in full. It did not provide expressly for replacement of any of the bracket assemblies which were attached to the outer wall of the tank to hold the outer ends of the spider rods. It did provide for replacement of eight spider rods. It seems to be the contention of City that, in replacing the spider rods, Texas Tower would necessarily have been required to repair the

wall under the bracket assemblies. And City calls attention to a jury finding that, at the time of the accident, Graham "was performing work that was intimately connected with the work contracted to be performed by Texas Tower and Construction Company." Assuming that we would apply the exception, quoted above, to *risks only intimately connected with defects*[1] which the contractor has undertaken to repair, as there stated, that obviously was not what the jury found. The finding is that *the work being performed* was intimately connected with *the work contracted to be performed.* The finding is of an undisputed fact. The *work being performed*— sandblasting and painting—*was expressly required* by the contract. In the absence of a contractual provision for complete general repair as in *Hammond,* supra, or requiring Texas Tower to replace the bracket assemblies, we are unwilling to hold, as a matter of law, that the contract required Texas Tower to replace such assemblies and to repair the corroded tank wall beneath such assemblies.

▮ Eight separate clusters of special issues were submitted to the jury to determine whether City had, by its conduct, negligently breached its duties to Graham, and whether such negligence was a proximate cause of his fatal injuries. One cluster was composed of special issues A, B and C. In answer to special issue A, the jury found that the wall of the water tank was defective and rusty between the anchor plates and bracket assemblies [where the spider rod pulled through the wall]. By issue B, the jury was asked if it found from a preponderance of the evidence that the City knew of the defective condition, and by issue C, if it found from a preponderance of the evidence that City should have known of the defective condition. The jury answered each of the issues, "[W]e do not." City misinterprets the answers to these issues. The jury's answers to these issues are not, as City contends, findings that City did not know, and in the exercise of ordi-

nary care should not have known, of the defective condition. The answers constitute nothing more than a refusal by the jury to find from a preponderance of the evidence that City knew, or in the exercise of ordinary care should have known, of the defective condition. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex. Sup.1966). However, if those were the only issues submitted to and answered by the jury on breach of duty, the answers might impel a legal conclusion that plaintiffs had failed to discharge their burden of proving that City had breached its duty of care owed to Graham, and thus might require the rendition of a take-nothing judgment; but all of the issues in the other seven clusters were answered favorably to the plaintiffs. If the answers to the issues in any one of the seven clusters will support the judgment, the negative answers to issues B and C do not require a reversal of plaintiffs' judgment.

▮ Eleven of City's "no evidence" points of error assert that one or more of the issues in each of the seven clusters have no support in the evidence. We overrule these points without extended discussion. In answer to special issue No. 3, the jury found that the wall of the water tank had become so deteriorated at the place where the bracket assembly pulled through as to constitute a dangerous condition; and in answer to special issues 11, 12 and 13, the jury found that City failed to make a proper inspection of the bracket assemblies and tie-down rods prior to commencement of the work of sandblasting, which failure was negligence and a proximate cause of Graham's injuries. Two of City's points assert that there is no evidence to support the findings that City failed to make a proper inspection of the bracket assemblies and tie-down rods, and that such failure was negligence. We are unable to agree. We think there was evidence from which the jury could conclude that a proper inspection of the bracket assemblies and tie-down rods would have revealed the danger-

---

1. Emphasis ours throughout unless otherwise indicated.

ous condition of the section of the wall through which the rod extended and to which the bracket assembly was attached. Much of the relevant evidence is set out in the opinion of the court of civil appeals and will not be repeated here. Such of the nineteen points as are not expressly mentioned are also overruled.

We consider now points of error Nos. 20, 22, 29 and 31 on which the writ was granted. Logically, point 29 should be considered first.

By point 29, City complains of the holding by the court of civil appeals that the trial court did not err in admitting into evidence a change order or supplemental contract executed after the Graham accident. The change order was requested by City officials and was accepted by Texas Tower. It called for the furnishing and installation of approximately twelve tie-down bracket assemblies at $18.80 each, the furnishing and installation of 350⅝" x 1½" bolts, and the furnishing and installation of 96 ⅝" x 7" tie-down bolts. The total cost of the additional material and labor was fixed at $317.-40. The contract also provided for fourteen additional working days. Stipulated in the written change order as "Reason for change" was *"Additional Work not called for in original contract;* necessity for additional working days."

The most hotly contested issue in the case, from the pleading stage to the return of the jury verdict, was whether City owed a duty of care to Graham or whether the original contract between City and Texas Tower relieved City of its duty. This fact is evidence from our discussion of City's first nineteen points. When the trial judge admitted the change order into evidence, over City's objection that its admission would lead the jury to believe that "there was something that should have been done prior to the death and injury" of Graham, he instructed the jury as follows:

"You may consider this only on the question of the scope of the contract of the City of Beaumont and Texas Tower and Construction Company. You may not consider it and you will not consider it for any purpose concerning any question dealing with lack of care, if any, or the want of care, if any, or the negligence, if any, as concerns the City of Beaumont."

■ City argues under this point that the rule, as illustrated by our decision in Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99 (1953), is that evidence of repairs or changes made subsequent to an injury are not admissible to show prior negligence; that the real purpose of plaintiffs in introducing the change order into evidence was to show negligence; and that the court's attempt to limit the purpose for which the jury might consider the evidence did not take away its effect upon the jury. City does not question, however, and we recognized in *Roosth & Genecov,* that evidence of such subsequent repairs or changes may be admissible for a purpose other than to prove negligence, particularly when, as here, the court by instruction limits the purpose for which the jury may consider the evidence. As pointed out in our discussion of City's "no duty" argument under its first nineteen points, the parties strongly disagreed as to whether the original contract called for such repairs as required that Graham consent to the risk that resulted in his injuries. As to this, the contract was far from clear. City took the position that the contract did so require. The change order was clearly admissible, in our opinion, as rebuttal evidence, and as showing that the parties did not intend by their original contract that employees of Texas Tower consent to the risks inherent in replacing bracket assemblies. The trial court's instruction was adequate to protect City against misuse of the evidence by the jury. We overrule point 29.

City's 20th point is closely related to its 29th point. In its 20th point, City complains of certain jury argument by plaintiffs' counsel. Counsel was discussing spe-

cial issue No. 20, and opened the argument complained of in this manner:

"We come now to another issue of questions here: 'Do you find from a preponderance of the evidence that the repair and replacing of bracket assemblies of the outer wall of the tank supporting the spider rods was omitted from the original contract of the tank repair between the City of Beaumont and Texas Tower and Construction Company?' * * *."

Counsel thus read special issue 20 and proceeded to suggest to the jury that, considering the provisions of the change order or supplemental contract, it was obvious that issue 20 should be answered that the repair and replacing of bracket assemblies were omitted from the original contract. Then, plaintiffs' counsel added:

"Now did this failure to include it in the original contract, did that contribute to the lack of safety in the structure of this tower? Of course it did so you must answer this 'Yes'."

■ Counsel for City objected to the argument on the ground that plaintiffs' counsel was using the change order "for the very purpose you [the trial judge] instructed the jury they should not consider it." The trial court sustained the objection and stated: " * * * the jury is instructed to regard the exhibit as the Court instructed you." Assuming that the statement to which objection was made was improper, we are of the opinion that it was not so prejudicial that its effect could not be eliminated by the trial judge by sustaining objection and by instruction. Rules 434 and 503, Texas Rules of Civil Procedure.

Point 22 is another improper argument point. In it, City complains that counsel read to the jury a part of a deposition of Johnny R. Allen, president of Texas Tower, which had been excluded from evidence. In the deposition, Allen had testified that prior to the accident he had tried to get permission to cut holes in the water tank to hang his rigging on, but that he was turned down. He then testified that "after the accident they let me cut holes in the roof and hang the rigging on." When the deposition was being read to the jury, plaintiffs were not permitted to read the quoted statement to the jury. In arguing the case to the jury, plaintiffs' counsel read to the jury the portion of the argument referred to including the quoted statement which had been excluded from evidence. City's counsel objected to the reading of the quoted statement, but the trial court did not rule on the objection.

■ The reading to the jury of the excluded statement was clearly erroneous, but we regard it as harmless. A quite similar statement by Allen in his deposition was read into evidence without objection; and with this testimony before the jury, we are not convinced that the reading of the unadmitted statement probably caused the jury to return the verdict it did return. Rules 434 and 503, Texas Rules of Civil Procedure.

■ By its 31st point, City insists that the courts below erred in refusing to award it indemnity or contribution from Texas Tower. Texas Tower was found by the jury to have been guilty of negligent conduct which was a proximate cause of Graham's injuries, but it was a subscriber under the Workmen's Compensation Law and, unless it contracted for such liability, is protected against claims for indemnity and contribution by Article 8306, Section 3, Vernon's Texas Civil Statutes. City contends that Texas Tower bound itself to indemnify City by two provisions of their contract which read as follows:

"THE CONTRACTOR and his Sureties shall indemnify and save harmless the OWNER and all its officers, agents, and employees from all suits, actions or claims of any character, name and description brought for or on account of any injuries or damages received or sustained by any person or persons or prop-

erty, on account of any negligent act or fault of CONTRACTOR, his agents or employees, in the execution of said contract; * * * and will be required to pay any judgment, with costs, which may be obtained against the OWNER growing out of such injury or damage."

"The CONTRACTOR agrees to fully indemnify and save the City whole and harmless from all costs, expenses and damages arising out of any real or asserted cause of action, and from any and all costs arising from wrong, injury, or damage that may be occasioned to any person or property or to his employees, arising out of his acts in connection with the construction of the said improvements, or occasioned by said CONTRACTOR, his agents, servants or employees."

In support of its contention that the quoted provisions authorize its recovery of indemnity, City cites Ohio Oil Co. v. Smith, 365 S.W.2d 621 (Tex.Sup.1963); Mitchell's v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957) and Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204 (1920). In all of the cited cases, the agreement to indemnify was much broader than the agreement in the instant case; and in all, the question was whether an indemnitor had agreed to indemnify an indemnitee against the consequences of its own negligence. In *Ohio Oil Co.,* the contractor agreed to indemnify Ohio against "all claims and damages of every kind * * * *arising out of or attributed, directly or indirectly to the operations of Contractor hereunder.* * * * " Under this broad indemnity agreement, we held that the contractor was obligated to indemnify Ohio against damages incurred as a result of its own negligence. In *Friedman,* we recognized that, "[a]n obligation to hold harmless from claims, liability or damage *resulting from a specified operation or instrumentality* will be enforced in accordance with its terms even though the indemnitee may thereby be relieved of the consequences of his own negligence." 303 S.W.2d 779. In *Houston & T. C. R. Co.,*

the contractor agreed to save the contractee "harmless from any and all claims for damages *arising from any cause whatsoever growing out of the construction, maintenance, and operation of said spur track."* We held that the agreement obligated the contractor to indemnify the contractee against damages resulting from the contractee's own negligence. City also cites Alamo Lumber Co. v. Warren Petroleum Corp., 316 F.2d 287 (5th Cir. 1963). In that case, the court of appeals held that indemnification against damages resulting from the indemnitee's own negligence was required by a contractual provision to hold the indemnitee harmless "from any and all liability * * * resulting from injuries * * * *while contractor is performing the work, which arises out of or in connection with the activities of contractor,* contractor's servants, agents and employees." The court held that the indemnity provision was no narrower than those construed in *Ohio Oil Co., Friedman* and *Houston & T. C. R. Co.*

We believe the two provisions quoted from the contract in the instant case, properly interpreted, unlike the provisions in the contracts in the cited cases, were only intended to indemnify the contractee-City against damages or claims resulting solely from acts or conduct of Texas Tower. The provision quoted first above expressly stipulates that indemnity is to be against claims for injuries or damages sustained *"on account of any negligent act or fault of CONTRACTOR * * *",* and that contractor will be required to pay any judgment obtained against City *"growing out of such injury or damage."* The provision of the second quoted paragraph is somewhat broader, but nevertheless limits the contractor's indemnification obligation to claims and damages "arising out of *his acts* in connection with the construction of the said improvements, or *occasioned by said contractor,* his agents, servants, or employees." We agree with the conclusion of the court of civil appeals that the language used in the instant contract does not

evidence an intention of the parties that Texas Tower should indemnify City for the consequences of its own negligent conduct, or for the consequences of the joint negligence of the parties, or for the consequences of the negligent conduct of City and the non-negligent conduct of Texas Tower. Cf. Humble Oil & Ref. Co. v. Wilson, 339 S.W.2d 954 (Tex.Civ.App.—Waco, 1960, writ ref'd, n. r. e.); Westinghouse Electric Corp. v. Childs-Bellows, 352 S.W.2d 806 (Tex.Civ.App.—Ft. Worth, 1962, writ ref'd).

City presents seven other points of error complaining of improper argument. We have carefully examined all of the points and have concluded that they should be overruled.

The judgment of the court of civil appeals is affirmed.

HAMILTON, J., dissenting.

REAVLEY and McGEE, JJ., not sitting.

HAMILTON, Justice (dissenting).

In this case, the fatal injury to the deceased, James Columbus Graham, Jr., occurred while he was an employee of Texas Tower and Construction Company. Graham was working on a water storage tank belonging to the City of Beaumont. He fell to his death when brackets attaching steel rods supporting him pulled away from the tank.

The respondents have recovered through a statutory wrongful death action against the City of Beaumont, and this writer concurs insofar as that result.

The work being performed by Graham, sandblasting and painting, was expressly required by the contract between Texas Tower and the City of Beaumont. The lawsuit brought by the respondents against the City alleged that the injury to Graham was a result of wrongs done by the City and Texas Tower. In answer to special issues, the jury found that the City failed to make proper inspection of the bracket assemblies and steel rods prior to the sandblasting, and that this failure was negligence and a proximate cause of Graham's injuries. Thus the case reaches this Court with fact findings which establish the joint negligence of the City and Texas Tower as a proximate cause of Graham's injury.

The City's contract with Texas Tower not only included sandblasting and painting; the City also paid for and received indemnification provisions from Texas Tower. The relevant indemnification portions of the contract read as follows:

"The CONTRACTOR and his Sureties shall indemnify and save harmless the OWNER and all its officers, agents and employees from all suits, actions or claims of any character, name and description brought for or on account of any injuries or damages received or sustained by any person or persons or property, on account of any negligent act or fault of CONTRACTOR, his agents or employees, in the execution of said contract; * * * and will be required to pay any judgment, with costs, which may be obtained against the OWNER growing out of such injury or damage."

"The CONTRACTOR agrees to fully indemnify and save the City whole and harmless from all costs, expenses and damages arising out of any real or asserted cause of action, and from any and all costs arising from wrong, injury, or damage that may be occasioned to any person or property or to his employees, arising out of his acts in connection with the construction of the said improvements, or occasioned by said CONTRACTOR, his agents, servants or employees."

The majority opinion holds that these provisions do not evidence an intention that Texas Tower should indemnify the City for the consequenses of its own negligent conduct. Rather, this Court has construed these provisions as intending an indemnification to the City in the event

of damages or claims resulting solely from acts or conduct of Texas Tower. As the negligence here was joint, the Court has denied the City of Beaumont indemnification from Texas Tower.

I cannot concur with this result.

This Court held in Ohio Oil Co v. Smith, 365 S.W.2d 621, 625 (Tex.Sup.1963), that:

"In this state, contracts written or construed so as to allow indemnity for liability arising out of the indemnitee's own negligence have long been held not to be violative of the public policy."

Hence, the only question to be considered in determining indemnification is whether or not the contract itself indemnifies the City for a judgment against it for its failure to inspect the steel rods, with resulting injury during the contractor's activities in performing the contractual work.

The second indemnification provision, quoted in its entirety above, provides that Texas Tower shall " * * * fully indemnify * * * the City * * * from all costs, expenses and damages arising out of any real or asserted cause of action * * * arising out of his acts in connection with the construction. * * * "

I believe that the cost of this lawsuit against the City was intended to be within the scope of this second indemnification provision. The jury findings can be characterized as determining that the damage, Graham's injury grew out of the activities of Texas Tower, but was a result of the wrong of the City in failing to inspect the steel rods. The wrong was the City's failure to inspect; it was perpetrated on Graham; and his injury grew out of the activities of Texas Tower in performing the work required under the contract. The second indemnification provision specifically provides for indemnification for all costs to the City from *any* cause of action arising out of the contractor's acts during the performance of the contractual work. The City is here seeking to recover from Texas Tower the cost arising out of a

lawsuit filed against it for damages resulting from wrong done to the deceased in connection with Texas Tower's performance of the contractual work. To my mind, this lawsuit is included within the term "any real or asserted cause of action" against the City, and the indemnification provision applies. In short, the first indemnification provision has already covered any liability arising from negligence of the contractor. The second provision must then necessarily be designed to protect the City against the costs of its own and third parties' wrongs during the construction.

Prior interpretations of the law of this jurisdiction support this construction. In the *Ohio Oil Co.* case the contractor agreed to indemnify his employer against "all claims and damages of every kind * * * arising out of or attributed, directly or indirectly to the operations of Contractor hereunder. * * * " In that case this Court held the contractor liable for acts resulting in injury to his own employee, even though the indemnitee's negligence caused the injury. The Court there said: "Applying these rules to the construction of Sec. 15 [quoted above], it is clear that Ohio is entitled to indemnity from Smith even though it was Ohio's negligence that resulted in Hunt's injury." 365 S.W.2d 621, 627. As in the instant case, the contractual provision in the *Ohio Oil Co.* case never specifically referred to negligent conduct by the indemnitee. In fact, in *Ohio Oil Co.* this Court particularly noted that "In owner-contractor situations judicial construction of indemnity clauses to cover the indemnitee's negligence notwithstanding absence of an express provision to that effect in the contract has been said to be common." 365 S.W.2d 621, 626.

Again, as the majority opinion points out, indemnification was held to lie in Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204 (1920). In that case the indemnification clause provided that the contractor would save his employer "harmless from any and

all claims for damages arising from any cause whatsoever growing out of the construction, maintenance, and operation of said spur track." As with *Ohio Oil Co.,* supra, this writer cannot determine that this provision differs materially from the operational indemnification clause in the instant case.

In Alamo Lumber Co. v. Warren Petroleum Corp., 316 F.2d 287 (5th Civ.1963), the court, after reviewing this State's prior decisions, allowed indemnification against damages caused by the indemnitee's own negligence. In that case, the provision was for indemnification "from any and all liability * * * resulting from injuries * * * while Contractor is performing the work, which *arises* out of or in connection with the *activities* of Contractor, Contractor's servants, agents and employees." [Emphasis added.] The "activities" of the contractor referred to in this provision appear analogous to the "acts" referred to in the indemnification provision in the instant case.

The majority opinion advises the reader to compare Humble Oil & Ref. Co. v. Wilson, 339 S.W.2d 954 (Tex.Civ.App.—Waco 1960, writ ref'd, n. r. e.) in support of denial of indemnification to the City. In that case, the contract provided for indemnification for injury "resulting from the *wilful or negligent acts or omissions* of Contractor's agents, employees, representatives or subcontractors." [Emphasis added.] The jury there found that both the indemnitor and indemnitee's negligence proximately caused the injury, and the court denied indemnification to the indemnitee. The *Humble Oil* court, in denying indemnity, held that "where the indemnity is from loss resulting from the indemnitor's 'negligent acts or omissions,' the dominant weight of authority establishes that the agreement does not cover loss where the indemnitee's negligence concurs in causing the injury." *339 S.W.2d 954, 955.*

If this is sound law, it nevertheless does not meet the situation here before us, where the indemnification provisions are not re-

stricted to claims resulting from the contractor's own negligence. In the instant case, the first indemnification provision refers to the contractor's negligence; the second provision, as discussed above, refers to the cost of any lawsuit for any wrong, injury or damage, irrespective of causation, if it arises out of the contractual activities.

The provision before us is nearly analogous to the provisions in the *Ohio Oil Co.* and *Alamo Lumber Co.* cases; as such, it covers the injury suffered by Graham, and the City should be indemnified for its liability. This indemnification would be part of the contract entered into and paid for by the City of Beaumont, and by granting it the Court would only be requiring Texas Tower to fulfill its obligations under this contract.

I therefore respectfully dissent as to the Court's holding on indemnification.